BACON, DOING BUSINESS AS WABASH ELEVATOR, *v.* PEOPLE OF THE STATE OF ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 76.   Argued December 6, 1912.—Decided February 24, 1913.

The denial to the States of the power to tax articles actually moving in interstate commerce rests upon the supremacy of the Federal power to regulate that commerce, and its postulate is necessary freedom of that commerce from the burden of local taxation.

The State cannot impose a tax upon articles moving in interstate commerce on the ground that such articles belong to its own citizens.

They, as well as others, are under the protection of the commerce clause of the Constitution.

The test of exemption from state taxation is not citizenship of the owner but whether or not the articles attempted to be taxed are actually moving in interstate commerce.

Property brought from another State and withdrawn from the carrier and held by the owner with full power of disposition becomes subject to the local taxing power notwithstanding the owner may intend to ultimately forward it to a destination beyond the State.

Goods within the State may be made the subject of a non-discriminatory tax though brought from another State and held by the consignee in the original package. *Woodruff* v. *Parham*, 8 Wall. 123.

243 Illinois, 313, affirmed.

THIS is a writ of error to review a judgment of the Supreme Court of the State of Illinois, which affirmed a judgment for the amount of a tax assessed against the plaintiff in error for personal property in the year 1907. The contention that the assessment was in violation of Art. I, § 8, clause 3, of the Federal Constitution in that it was laid upon a subject of interstate commerce, was overruled by the state court. 243 Illinois, 313.

The facts were agreed to, as follows:

"That the defendant, E. R. Bacon, had on the 1st day of April, 1907, and for many years prior to said date, his residence and domicile in the Town of Lake View in the County of Cook and State of Illinois; that the defendant E. R. Bacon, on the 1st day of April, 1907, and prior thereto occupied and controlled a certain private grain elevator known as Wabash Elevator and that the said grain elevator was located at 33rd and Waterville Streets in the Town of South Town in the City of Chicago, County of Cook and State of Illinois; that the only personal property in the Town of South Town owned by the defendant on the 1st day of April, 1907, was certain grain stored in the said elevator above mentioned and certain personal property used by him in his business office located at 234 La Salle street in the City of Chicago,

Illinois, and that the said business office and the said personal property used by said defendant therein was not then a part of or in any way connected with said grain elevator; that the said defendant, E. R. Bacon, has paid the tax assessed on April 1st, 1907, on all the personal property used by him in his said business office located at 234 La Salle street in the City of Chicago, Illinois; that the said defendant, E. R. Bacon, has paid the tax assessed on April 1st, 1907, on all his personal property located in the Town of South Town, except the tax assessed on the grain, which was stored in the said Wabash Elevator on the 1st day of April, 1907; that all of said grain stored in the said Wabash Elevator on the 1st of April, 1907, was sold to the defendant, E. R. Bacon, by various persons domiciled in and residents of various States in the southern and western portions of the United States, and that the said persons who sold the said grain to the said defendant, E. R. Bacon, did, prior to the said sale, and the shipment of said grain as hereinafter mentioned, enter into certain contracts with certain railroad companies for the transportation of said grain to the cities of New York and Philadelphia and various other cities in the eastern portions of the United States, all of said cities being outside of the State of Illinois, in and by which said contracts the said persons reserved the right to the owners of the said grain to remove said grain from the cars of the said railroad companies at the City of Chicago, Illinois, for the mere temporary purposes of inspecting, weighing, cleaning, clipping, drying, sacking, grading or mixing, or changing the ownership, consignee or destination of said grain; that after the making of the said contracts by the original vendors of the said grain and the said railroad companies, the said original vendors delivered to the said railroad companies, under and in accordance with the said contracts, the said grain for transportation to said cities of New York, Philadelphia and the said

divers other cities specified in the said contracts of shipment.

"That the said E. R. Bacon was, prior to and on April 1st, 1907, represented in the cities of New York, Philadelphia, and the said divers other cities in the said eastern portions of the United States by various agents, by and through whom he disposed of grain and other commodities on the eastern markets, and that all of the said grain above mentioned was purchased by him as aforesaid for the sole and only purpose of being sold and disposed of by and through his said agents in the aforesaid eastern cities, and that the said grain or any portion thereof was not at any time intended, by said original owners nor by said E. R. Bacon, for use, sale or disposition in the State of Illinois.

"That at the time the said grain was sold to the said defendant, E. R. Bacon, by the said original vendors thereof domiciled in and residents of said southern and western portions of the United States, his sole and only intention regarding the said grain was that all of the said grain should be transported and carried from the place of its said original consignment to said railroad companies to the said points of destination named in the said contracts of shipment entered into between the said original vendors of said grain and the said railroad companies, as hereinbefore mentioned;

"That the said grain was sold to the defendant, E. R. Bacon, by the original vendors of said grain along with the existing contracts of shipment between the said original vendors and the said railroad companies, and along with the said privilege of removing said grain from the said cars of the said railroad companies, which said privilege was reserved to the owner of the said grain in the manner and for the purposes hereinbefore mentioned; that, in pursuance of the privilege which the defendant, E. R. Bacon, was entitled to under said contracts of shipment,

as the owner of said grain, he removed said grain from the said railroad cars and placed the same in his said private Wabash Elevator for the sole purposes of inspecting, weighing, cleaning, clipping, drying, sacking, grading and mixing, as specified in said contracts of shipment, and not for the purposes of changing the ownership, consignee or destination of said grain; and that said grain remained in said elevator for only such time as was reasonably necessary for the purposes of inspecting, weighing, cleaning, clipping, drying, sacking, grading and mixing; and that immediately after said grain had been inspected, weighed, cleaned, clipped, dried, sacked, graded and mixed, it was turned over again to the said railroad companies for shipment to the said eastern cities in accordance with the said provisions of the said original contracts of shipment entered into between the said original vendors of said grain and the said railroad companies, and that the said grain was thereupon forwarded by said railroad companies to its said original points of destination.

"That the said grain so placed and contained in the said elevator was not, nor was any part thereof, at any time on, before or after the 1st day of April, 1907, sold or disposed of or consumed in the State of Illinois, but that said grain and each and every part thereof, was transported out of said State to the points of destination, and in the manner and form aforesaid;

"That on the 1st day of April, 1907, the Board of Assessors of Cook County, Illinois, assessed a tax against the said E. R. Bacon on the said grain contained in the said Wabash Elevator on the said 1st day of April, 1907, on a valuation of $5,000 which was established by the Board of Review and which was equalized by the State Board of Equalization and that the tax levied thereon against the defendant, E. R. Bacon, for the year 1907, amounts to $360; which is the tax to recover which this suit is brought; that the defendant owns certain personal

property in the town of Lake View, County of Cook and State of Illinois, and that said personal property is contained in his said domicile and residence, and that the said defendant has heretofore paid all the taxes assessed on the said personal property on the said 1st day of April, 1907, and that the said defendant, E. R. Bacon, owned, on the 1st day of April, 1907, no other personal property taxable by the taxing bodies of the State of Illinois other than that above mentioned."

*Mr. Walter Bachrach*, with whom *Mr. Moritz Rosenthal* and *Mr. Joseph W. Moses* were on the brief, for plaintiff in error:

The grain taxed was a subject of interstate commerce at the time the assessment was made and was, therefore, by virtue of Art. I, § 8, clause 3, of the Constitution of the United States, immune from taxation by the state taxing bodies.

The temporary detention of the grain while in transit without the intention of abandoning the original movement beyond the limits of the State, which movement was ultimately completed, did not deprive the transportation of the character of interstate commerce. *Coe v. Errol*, 62 N. H. 303, aff'd 116 U. S. 517; *Caldwell v. North Carolina*, 187 U. S. 622; *Kelley v. Rhoads*, 188 U. S. 1; *Conn. River Lumber Co. v. Columbia*, 62 N. H. 286; *Prairie Oil Co. v. Ehrhardt*, 244 Illinois, 634; *State v. Engle*, 5 Vroom (N. J.), 425; *State v. Carrigan*, 10 Vroom (N. J.), 36; *Berwind Coal Co. v. Jersey City*, 75 N. J. L. 76; *Burlington Lumber Co. v. Willets*, 118 Illinois, 559.

The character of a shipment, whether local or interstate, is not affected by a transfer of the title during the transportation. *Gulf, Colo. &c. R. R. Co. v. Texas*, 204 U. S. 403; *Conn. River Lumber Co. v. Columbia*, 62 N. H. 286.

Cases holding that property which is detained within

the State on its interstate journey is taxable, are distinguishable from the one at bar and may be classified as follows:

Where the produce was grown in the taxing State and had never been out of that State but was intended for exportation by the owner. *Coe* v. *Errol, supra; Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82.

Where the property, though coming from another State, was being held in actual storage to be removed for use at a more profitable time.

To be held until orders for it were taken. *Susquehanna Coal Co.* v. *South Amboy,* 184 Fed. Rep. 941; *Lehigh Coal Co.* v. *Junction,* 75 N. J. L. 922.

Until the owner desired to use it in his own business. *Diamond Match Co.* v. *Ontonagon, supra; Burlington Lumber Co.* v. *Willets,* 118 Illinois, 559.

Until customers made their selection from goods being detained. *Am. Steel & Wire Co.* v. *Speed,* 192 U. S. 500.

Where there was not a through shipment and any further movement required a new specification of the goods and new forwarding orders. *General Oil Co.* v. *Crain,* 209 U. S. 211.

Where the goods were partially for sale within the taxing State and the part to be there sold was unascertained. *Am. Steel & Wire Co.* v. *Speed, supra.*

Where the goods had come to rest in the State of their ultimate destination. *Brown* v. *Houston,* 114 U. S. 622; *Pittsburg Coal Co.* v. *Bates,* 156 U. S. 577.

*Mr. Louis J. Behan* and *Mr. Gustavus J. Tatge,* with whom *Mr. Francis S. Wilson* was on the brief, for defendant in error.

MR. JUSTICE HUGHES, after making the above statement, delivered the opinion of the court.

Did the enforcement of the local tax upon the grain in the elevator of the plaintiff in error amount to an unconstitutional interference with interstate commerce?

The Supreme Court of Illinois was of the view that if the grain was in transit in interstate commerce it was exempt from local taxation. In its opinion, that court said: "The sole question presented by this record is, was the grain upon which the tax was levied in transit on April 1, 1907? If it was so in transit it was not liable to be taxed while passing through the State to its destination. On the other hand, if it was not in transit but had a situs in this State it was subject to taxation under state authority." In this view of the issue, the court sustained the recovery of the amount of the tax.

It is now contended, however, by the defendant in error that the question thus defined was an immaterial one; that even if the property was in transit and was the subject of interstate commerce, it was nevertheless liable to assessment, in common with the other personal property of the plaintiff in error, because he was a resident of the State and the property was within the limits of the county where the assessment was made.

This argument proceeds upon a misconception of the ground upon which the power to tax articles actually moving in interstate transportation is denied to the States. That denial rests upon the supremacy of the Federal power to regulate interstate commerce. Its postulate is the necessary freedom of that commerce from the burden of such local exactions as are inconsistent with the control and protection of that power. The fact that such a burden is sought to be imposed by the State of the domicile of the owner, upon property moving in interstate commerce, creates no exception. That State enjoys no prerogative to make levy upon such property passing through it, because it may belong to its citizens. They, as well as others, are under the shelter of the commerce

clause. The question is determined not by the residence
of the owner but by the nature and effect of the particular
state action with respect to a subject which has come under
the sway of a paramount authority.

This is clearly shown by the reasoning of the decisions
which define the limits of the state taxing power with
respect to property about to leave the State of its origin
or while it is on its way to its destination in another
State. In *Coe* v. *Errol*, 116 U. S. 517, the question was
whether the products of a State, in that case timber cut
in the forests of New Hampshire, though intended for
exportation to another State and partially prepared for
that purpose by being deposited at a place or port of
shipment, was liable to be taxed like other property
within the State. The claim of immunity by reason of
the fact that it was owned by non-residents was at once
disposed of. "If not exempt from taxation for other
reasons," said the court (*id.*, p. 524), "it cannot be ex-
empt by reason of being owned by non-residents of the
State. We take it to be a point settled beyond all con-
tradiction or question, that a State has jurisdiction of all
persons and things within its territory which do not belong
to some other jurisdiction." The case was put upon the
same basis as though the timber had been owned by
residents of New Hampshire, and the question was treated
as being one with respect to the point of time at which
goods produced within the State, which are the subject of
exportation to another State, cease to be liable to state
taxation. It was concluded that these articles could be
taxed by the State until, but not after, they had been
actually started in the course of transportation to another
State or had been committed to a carrier for that purpose.

The court said: "This question does not present the
predicament of goods in course of transportation through
a State, though detained for a time within the State by
low water or other causes of delay, as was the case of the

logs cut in the State of Maine, the tax on which was abated by the Supreme Court of New Hampshire. Such goods are already in the course of commercial transportation, and are clearly under the protection of the Constitution. And so, we think, would the goods in question be when actually started in the course or transportation to another State, or delivered to a carrier for such transportation." (*Id.*, p. 525.)

After pointing out the importance of clearly defining, so as to avoid all question, the time when state jurisdiction over the commodities of commerce begins and ends, and after commenting on the established rule as to the power of taxation with respect to goods which had come to their place of rest within the State, for disposal and use (*Woodruff* v. *Parham*, 8 Wall. 123; *Brown* v. *Houston*, 114 U. S. 622), the court thus restated its conclusion, in language applicable generally to the products of the State without distinction with respect to ownership by residents or non-residents: "But no definite rule has been adopted with regard to the point of time at which the taxing power of the State ceases as to goods exported to a foreign country or to another State. What we have already said, however, in relation to the products of a State intended for exportation to another State will indicate the view which seems to us the sound one on that subject, namely, that such goods do not cease to be part of the general mass of property in the State, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey. We think that this must be the true rule on the subject. It seems to us untenable to hold that a crop or a herd is exempt from taxation merely because it is, by its owner, intended for exportation. If such were the rule in many States there would be nothing but the lands and real

estate to bear the taxes. Some of the Western States produce very little except wheat and corn, most of which is intended for export; and so of cotton in the Southern States. Certainly, as long as these products are on the lands which produce them, they are part of the general property of the State. And so we think they continue to be until they have entered upon their final journey for leaving the State and going into another State." (*Id.*, pp. 527, 528.)

In *General Oil Company* v. *Crain*, 209 U. S. 211, the owner of the property, which was sought to be subjected to an inspection tax in Tennessee, was a Tennessee corporation. The property was oil contained in the company's tanks at Memphis. It was contended that the oil in these tanks was in transit from the place of manufacture in Pennsylvania to the place of sale in Arkansas and that the holding of it in Memphis was merely for the purpose of separation, distribution and reshipment, and was for no longer time than required by the nature of the business and the exigencies of transportation. The court considered the question from the standpoint of the general power of the State to tax. The oil was held to be taxable, but not upon the ground that its owner was domiciled in Tennessee. It was recognized that if the oil were actually in transit it would not be taxable. But it was found not to be in movement through the State; it had reached the destination of its first shipment and was held at Memphis for the business purposes and profits of the company. The principle applied was that announced in *American Steel & Wire Co.* v. *Speed*, 192 U. S. 500. See *Kelley* v. *Rhoads*, 188 U. S. 1, 5, 7; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82, 93–96.

We come then to the question whether the grain, here involved, was moving in interstate commerce so that the imposition of the local tax may be said to be repugnant to the Federal power.

The following facts are shown by the agreed statement: The grain had been shipped by the original owners who were residents of southern and western States, under contracts for its transportation to New York, Philadelphia and other eastern cities which reserved to the owners the right to remove it from the cars at Chicago "for the mere temporary purposes of inspecting, weighing, cleaning, clipping, drying, sacking, grading or mixing, or changing the ownership, consignee or destination" thereof. While the grain was in transit it was purchased by Bacon, the plaintiff in error, who succeeded to the rights of the vendors under the contracts of shipment. He was represented at the points of destination by agents through whom he disposed of grain and other commodities on the eastern markets, and the grain in question was purchased by him solely for the purpose of being sold in this way and with the intention to forward it according to the shipping contracts; it was not his intention to dispose of it in Illinois. Upon the arrival of the grain in Chicago, Bacon availed himself of the privilege reserved and removed it from the cars to his private elevator. This removal, it is said in the agreed statement of facts, was for the sole purposes of inspecting, weighing, grading, mixing, etc., and not for the purpose of changing its ownership, consignee or destination. It is added that the grain remained in the elevator only for such time as was reasonably necessary for the purposes above mentioned, and that immediately after these had been accomplished it was turned over to the railroad companies and was forwarded by them to the eastern cities in accordance with the original contracts of transportation. No part of the grain was sold or consumed in Illinois. It was while it was in Bacon's elevator in Chicago that it was included in the assessment as a part of his personal property.

But neither the fact that the grain had come from outside the State nor the intention of the owner to send it to

another State and there to dispose of it can be deemed
controlling when the taxing power of the State of Illinois
is concerned. The property was held by the plaintiff in
error in Chicago for his own purposes and with full power
of disposition. It was not being actually transported and
it was not held by carriers for transportation. The plain-
tiff in error had withdrawn it from the carriers. The pur-
pose of the withdrawal did not alter the fact that it had
ceased to be transported and had been placed in his hands.
He had the privilege of continuing the transportation
under the shipping contracts, but of this he might avail
himself or not as he chose. He might sell the grain in
Illinois or forward it as he saw fit. It was in his posses-
sion with the control of absolute ownership. He intended
to forward the grain after it had been inspected, graded,
etc., but this intention, while the grain remained in his
keeping and before it had been actually committed to the
carriers for transportation, did not make it immune from
local taxation. He had established a local facility in
Chicago for his own benefit and while, through its em-
ployment, the grain was there at rest, there was no reason
why it should not be included with his other property
within the State in an assessment for taxation which was
made in the usual way without discrimination. *Woodruff
v. Parham, supra; Brown v. Houston, supra; Coe v. Errol,
supra; Pittsburgh & Southern Coal Co. v. Bates*, 156 U. S.
577; *Diamond Match Co. v. Ontonagon, supra; American
Steel & Wire Co. v. Speed, supra; General Oil Co. v. Crain,
supra.*

The question, it should be observed, is not with respect
to the extent of the power of Congress to regulate inter-
state commerce, but whether a particular exercise of state
power in view of its nature and operation must be deemed
to be in conflict with this paramount authority. *American
Steel & Wire Co. v. Speed, supra,* pp. 521, 522. Thus,
goods within the State may be made the subject of a

non-discriminatory tax though brought from another State and held by the consignee for sale in the original packages. *Woodruff* v. *Parham, supra.* In *Brown* v. *Houston, supra,* the coal on which the local tax was sustained had not been unloaded, but was lying in the boats in which it had been brought into the State and from which it was offered for sale. In *Pittsburgh & Southern Coal Co.* v. *Bates, supra,* coal had been shipped from Pittsburgh to Baton Rouge in barges which, to accommodate the owner's business, had been moored about nine miles above the point of destination. The coal while remaining on the barges under these conditions was held subject to taxation. In *General Oil Co.* v. *Crain, supra,* the oil which had been brought from Pennsylvania to Memphis, a distributing point, was held in tanks, one of which was kept for oil for which orders had been received from Arkansas, Louisiana and Mississippi prior to the shipment from Pennsylvania, and which had been shipped especially to fill such orders. The tank was marked "Oil Already Sold in Arkansas, Louisiana and Mississippi." The local tax upon this oil, which remained in Tennessee only long enough (a few days) to be properly distributed according to the orders, was sustained.

In the present case the property was held within the State for purposes deemed by the owner to be beneficial; it was not in actual transportation; and there was nothing inconsistent with the Federal authority in compelling the plaintiff in error to bear with respect to it, in common with other property in the State, his share of the expenses of the local government.

*Judgment affirmed.*