## In re COLD METAL PROCESS CO.
### No. 808.

District Court, W. D. Pennsylvania.
Jan. 28, 1935.

See, also, 9 F. Supp. 994.

Reed, Smith, Shaw & McClay, of Pitts-burgh, Pa. (by John G. Frazer, John J. Heard, and John C. Bane, Jr., all of Pitts-burgh, Pa.), and Byrnes, Stebbins & Blenko, of Pittsburgh, Pa. (by Walter J. Blenko and W. H. Parmelee, both of Pitts-burgh, Pa.), for petitioner.

Patterson, Crawford, Arensberg & Dunn, of Pittsburgh, Pa. (by C. F. C. Arensberg, of Pittsburgh, Pa.), and Brown, Critchlow & Flick, of Pittsburgh, Pa. (by Jo. Baily Brown and Paul N. Critchlow, both of Pittsburgh, Pa.), for respondent.

McVICAR, District Judge.

This case is now before us on the mo-tion of the United Engineering & Foundry Company to dismiss the petition of the Cold Metal Process Company for the appoint-ment of arbitrators, etc., under the United States Arbitration Act (9 USCA §§ 1–15). In considering this motion the material averments of fact contained in the petition must be taken as true. These averments so far as necessary to state herein are that the Cold Metal Process Company is a cor-poration of the state of Ohio, and the Unit-ed Engineering & Foundry Company is a corporation of the state of Pennsylvania; that on June 20, 1927, these two corpora-tions entered into a written contract which provided, inter alia, that, if certain claims in an application for a patent to the Com-missioner of Patents of the United States were granted, the Cold Metal Process Com-pany would grant to the United Engineer-ing & Foundry Company an exclusive license to make, use, and sell rolling mills which included four high hot mills and four high cold mills in which the major portion of the power is supplied to the rolls direct-ly. The contract further provided that, if the parties were unable to agree upon the payment on account of said license, the matter would be submitted to three arbitra-tors named therein.

The Cold Metal Process Company, at the time of the making of said contract, was not equipped to sell or distribute such rolling mills or rolling mill equipment throughout the United States. The United Engineering & Foundry Company was thus equipped, and had been engaged prior to June 20, 1927, and thereafter, in the manufacture and sale of rolling mill equipment of the character embraced within the contract aforesaid. It was the intention of the parties to the said contract that the United Engineering & Foundry Company should sell and deliver throughout the United States rolling mill equipment covered by the license referred to in said contract. The Cold Metal Process Company was granted a patent covering the claims referred to in said contract. The United Engineering & Foundry Company has made, used, and sold rolling mills under the claims referred to in said contract. It has not made any payment to the Cold Metal Process Company by reason of its use of the claims aforesaid. Two of the arbitrators named in the contract have died; the third has resigned.

The petition of the Cold Metal Process Company prays that this court assume jurisdiction of this petition under the provision of the United States Arbitration Act of February 12, 1925, §§ 1–15 (9 U. S. C. §§ 1 to 15 [9 USCA §§ 1–15]); that this court direct the parties to proceed to an arbitration to determine the amount payable to the petitioner, if any; to appoint three arbitrators to act under said contract and for general relief. The United Engineering & Foundry Company filed its motion to dismiss on the ground that this court was without jurisdiction under the act aforesaid. In the determination of this motion two questions are involved; the first is whether the Arbitration Act aforesaid is limited to maritime transactions and to contracts involving interstate commerce. If the act is limited to interstate commerce, then the second question arises, whether the contract of June 20, 1927, as to arbitration involves interstate commerce. The sections of the United States Arbitration Act aforesaid which relate to jurisdiction are the first four sections thereof. Section 1 (9 USCA § 1) defines maritime transactions and commerce. Commerce, it states, "means commerce among the several States or with foreign nations." Section 2 (9 USCA § 2) provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable."

Section 3 (9 USCA § 3) provides for the staying of proceedings under an agreement which contains an issue referable to arbitrators. Section 4 (9 USCA § 4) provides that: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

While the act is not clear, I am of the opinion that it was the intent and purpose of Congress to limit the powers conferred in sections 3 and 4 thereof to contracts or agreements specified in section 2, with the definitions contained in section 1, and therefore that the jurisdiction of the court under the act is limited to maritime transactions and to contracts evidencing a transaction involving commerce as provided for in said sections 1 and 2. This view has been sustained by all of the cases brought to our attention. See Zip Mfg. Co. et al. v. Pep Mfg. Co., 44 F.(2d) 184 (D. C. Del.); In re Woerner, 31 F.(2d) 283 (C. C. A. 2); Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc., 62 F.(2d) 1004 (C. C. A. 2). See, also, Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 70 F.(2d) 297 (C. C. A. 2).

I am also of the opinion that the contract for a license under the patent of June 20, 1927, is not a contract involving interstate commerce within the meaning of the Arbitration Act aforesaid. In the case of Zip Mfg. Co. et al. v. Pep Mfg. Co., supra, Judge Nields of that court held it did not apply to a contract providing for arbitration of the question of infringement thereunder. In the case of In re Woerner, supra, it was held that an arbitration agreement in a contract for the organization of a corporation to sell knitting machines to

994

be used in foreign commerce was not within the terms of said act.

In Hammer v. Dagenhart, 247 U. S. 251, 272, 38 S. Ct. 529, 531, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, the Supreme Court, speaking by Mr. Justice Day, said:

"Commerce 'consists of intercourse and traffic * * * and includes the transportation of persons and property, as well as the purchase, sale and exchange of commodities.' The making of goods and the mining of coal are not commerce, nor does the fact that these things are to be afterwards shipped, or used in interstate commerce, make their production a part thereof. Delaware, Lackawanna & Western R. R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397.

"Over interstate transportation, or its incidents, the regulatory power of Congress is ample, but the production of articles, intended for interstate commerce, is a matter of local regulation. 'When the commerce begins is determined, not by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, nor by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state.' Mr. Justice Jackson in Re Greene (C. C.) 52 F. 113. This principle has been recognized often in this court. Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615, and cases cited. If it were otherwise, all manufacture intended for interstate shipment would be brought under federal control to the practical exclusion of the authority of the states, a result certainly not contemplated by the framers of the Constitution when they vested in Congress the authority to regulate commerce among the states."

Under the Federal Employers' Liability Act (45 USCA § 51 et seq.), the Supreme Court in Chicago & Eastern Illinois Railroad Co. v. Industrial Commission of Illinois, 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304, held that a railroad employee engaged in oiling an electric motor used for hoisting coal into a chute, to be taken therefrom by locomotives engaged in interstate transportation, was not engaged in interstate commerce. See, also, Pennsylvania Railroad Co. v. Manning, 62 F.(2d) 293 (C. C. A. 3).

Section 2 of the Arbitration Act aforesaid, in referring to contracts for arbitration, referred to them as "a contract evidencing a transaction involving commerce."

It seems to follow that the written agreement in section 4 should be qualified in accordance with the language of section 2, and therefore that the contract itself must evidence a transaction involving interstate commerce.

The contract in this case does not evidence a transaction involving interstate commerce. I am of the opinion that this court is without jurisdiction under the Arbitration Act aforesaid, and therefore that the petition to dismiss should be sustained and the rule to show cause granted thereon should be discharged.

Let an order or decree be prepared accordingly.