PRAIRIE OIL & GAS CO. v. JEFFERSON COUNTY, TEX., et al.

No. 7385.

Circuit Court of Appeals, Fifth Circuit.

March 29, 1935.

Rehearing Denied April 26, 1935.

David T. Searls and Wm. A. Vinson, both of Houston, Tex., for appellant.

George D. Anderson and James A. Harrison, both of Beaumont, Tex., for appellees.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, Prairie Oil & Gas Company, brought this suit against officers of Jefferson County, Tex., and of Nederland Independent School District, located in that county, to cancel and enjoin the enforcement of taxes purported to have been assessed in favor of said county and school district, respectively, against the appellant, as of January 1, 1929, on crude petroleum oil then contained in tanks at the tank farm of the Pure Oil Pipe Line Company of Texas at Smith's Bluff, Tex.; the amount of oil assessed in favor of Jefferson County being 400,000 barrels, and the amount of oil assessed in favor of the school district being 500,000 barrels. The validity of the taxes purported to have been assessed was challenged on the ground that the oil which was the subject thereof was in course of interstate transportation under tenders of shipment made long prior to January 1, 1929, and was not subject to ad valorem taxation in said county as of January 1, 1929. Upon the submission of the cause on the pleadings and evidence, the court rendered a decree denying the relief prayed for and taxing the costs against the appellant; the decree providing for it being without prejudice to the right of the appellees to sue for and recover the taxes sought to be enjoined if the appellant fails voluntarily to pay the same; the decree reciting that the rights of the appellees in that regard were not litigated in the cause.

Beginning prior to March, 1927, and throughout that year, and the years 1928, 1929, and 1930, the appellant, which for many years has been engaged in purchasing crude oil from producers and in making sales thereof, purchased crude oil in the so-called Ranger District in Texas, known as Ranger crude, and delivered that oil to the Prairie Pipe Line Company for carriage by it and its connecting carrier, the Pure Oil Pipe Line Company of Texas, the oil being tendered to the initial carrier in lots of 100,-000 barrels each, consigned to appellant, "Destination: Smith's Bluff Terminal (on board boats)," each shipment being governed by a joint proportional tariff filed with the Interstate Commerce Commission, governing the movement of crude petroleum from named points in the Ranger District to Smith's Bluff Terminal (on board boats), for interstate transportation only. In October, 1926, the appellant entered into a contract with the Vacuum Oil Company for the sale to the latter during the year 1927 of a quantity of Ranger crude oil of a specified gravity, approximately 2,000 barrels per day throughout that year, delivery to be made to the purchaser on tank steamers at Smith's Bluff, Tex., the purchaser's Gulf terminal, and the contract providing that the first steamer would arrive at loading docks at Smith's Bluff, Tex., during the first half of March, 1927, and that the purchaser would give the seller definite loading dates ten days in advance of the arrival of ships. Prior to the loading on March 9, 1927, of the first ship furnished by the purchaser, the appellant had had transported in the way above stated 600,000 barrels of oil which had been deposited in tanks at the tank farm of the Pure Oil Company of Texas, located in Jefferson County, Tex., and in the Nederland Independent School District. During the years 1927, 1928, and 1929, the appellant had contracts, in addition to the one with the Vacuum Oil Company, to sell oil to the Humble Oil & Refining Company, and to the Pure Oil Company, the oil to be delivered on ships at Smith's Bluff, Tex., for transportation to the refineries of the respective purchasers located in states other than Texas. From the time shipment of oil to the refineries of purchasers began in March, 1927, the appellant continuously throughout the years 1927, 1928, and 1929 had in tanks at said tank farm a quantity of oil greatly in excess of the quantity for which appellant found purchasers, throughout the time when shipments to the refineries were being made additional shipments from the Ranger Field being made by the appellant, with the result that at all times during the years 1928, and 1929, the appellant had more than 500,-000 barrels of oil in the tanks at said tank farm; the amount of appellant's oil in the tanks on January 1, 1929, being 597,025.92 barrels. In having shipped and delivered at the tank farm more oil than was required to fill contracts made for the sale of oil, the appellant had in mind the making of sales of oil other than those above men-

tioned, and appellant tried to make sales to other parties of oil delivered to tanks at the tank farm, but failed to do so, with the result that throughout the years 1928 and 1929 more than 500,000 barrels of appellants' oil in excess of the amount thereof required to fill contracts of sale made by the appellant continuously were in tanks at the tank farm and available for sale by the appellant to parties other than those who had made contracts of purchase. After the appellant's oil reached the tank farm, under instructions given by the appellant the Pure Oil Pipe Line Company held it subject to orders of appellant to deliver to the Smith's Bluff Terminal Company, to be delivered by that company on board boats, and none of the oil was delivered to that company to be delivered on boats except in pursuance of such orders given by the appellant; and there was no restriction as to the time the oil in the tanks would be permitted to remain therein subject to appellant's orders to deliver on board boats. The tank farm consisted of thirteen tanks, each of the capacity of 55,000 barrels, located in the vicinity of the dock on the Neches river where boats of purchasers of oil arrived, and the tanks were connected with the dock by the pipe line of Smith's Bluff Terminal Company. When oil was to be delivered on board vessels by the Smith's Bluff Terminal Company, generally, if not always, it was drawn from the four tanks located nearest to the pipe line of the Smith's Bluff Terminal Company; the oil in the other nine tanks rarely being drawn on or touched. When oil was drawn for shipment from the four tanks mentioned, those tanks were filled, not from the other nine tanks, but with new or other oil transported through the pipe line of the Pure Oil Pipe Line Company. Oil stored in some of the tanks remained therein for long periods, sometimes considerably more than a year. Such prolonged storage in tanks was a cause of the lowering of the gravity of the oil contained therein. Transfers of oil from tank to tank were made in the years 1928, 1929, and 1930, by the Pure Oil Pipe Line Company. Evidence supported a finding of the court to the effect that transfers of oil to tanks which had long held the same oil were made to bring the oil in the tanks to which transfers were made to the standard grade.

The appellant so planned the movement of its oil from the Ranger District that at all times throughout the years 1928 and 1929 it continuously had at the tank farm more than 500,000 barrels of oil available for sale, the appellant's intention being that that amount of oil would remain there for an indefinite time awaiting a sale or sales of it, no part of it to be started on its ultimate interstate passage until a sale or sales of it should be effected. As to more than 500,000 barrels of the oil in the tanks at the tank farm, the transportation of it was stopped, and it was brought to rest for an indefinite time to enable the appellant to have an opportunity to effect sales of it, a purpose outside of the mere transportation of the oil. The detention in tanks of a great quantity of oil was not a mere temporary interruption of movement due to exigencies of transportation by successive connecting carriers. The appellant, the owner of the oil, intentionally caused more than 500,000 barrels of it to be detained at the tank farm for use in its business of selling oil to be delivered on boats at Smith's Bluff, Tex., for interstate transportation. Though the oil while in the tanks was in the custody of the carrier, the Pure Oil Pipe Line Company, it appears that the understanding between the appellant and the carrier was that that oil was to remain in tanks until the appellant notified the carrier to have delivery of oil made on board boats by the Smith's Bluff Terminal Company, and that so much of the oil in tanks as was not delivered to boats for said transportation would remain in tanks for an indefinite time, during which the owner so far had control of the oil as to be able to sell it in the event of an opportunity to do so being afforded. It also appears that while the oil remained in tanks the carrier, for the benefit of the appellant, caused oil to be transferred to tanks in which oil had remained for a long period; such transfer having the effect of bringing the oil in the tanks to which the transfers were made to the standard grade. What was done as to more than 500,000 barrels of the oil in tanks amounted to keeping it in storage while the appellant was awaiting an opportunity to sell it. The great quantity of oil, in addition to what was required in complying with the owner's orders to make deliveries to boats, was not kept from being stock in trade of its owner, kept for sale, by the circumstance that the owner was unsuccessful in its efforts to make sales other than those above referred to. As to so much of the oil as was detained in tanks for the purpose of enabling its owner to avail itself of opportunities to sell it before its delivery to boats for interstate transportation, there was such

a break in the continuity of the transportation to serve purposes of the owner that that part of the oil is to be regarded as having been brought to rest at the tank farm, and there getting the benefit for a considerable period of the property protection afforded by the laws of Texas, with the result of such oil becoming subject to taxation at the place where it was so detained. Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Atlantic Coast Line R. Co. v. Standard Oil Co., 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270. Under the law of Texas property on hand on January first of any year is subject to taxation for that year. On January 1, 1929, substantially more than 500,000 barrels of appellant's oil, in addition to what was required to comply with appellant's orders to make deliveries on boats, having been in tanks at the tank farm located in Jefferson County, Tex., and in Nederland Independent School District of that county, to be kept there for an indefinite time to serve business purposes of the owner, the appellant, the above-mentioned amounts of oil which were assessed for taxation, as of January 1, 1929, against appellant and in favor of that county and that school district, respectively, was subject to be so assessed. Under the facts disclosed by the evidence, those assessments were not subject to be challenged on the ground that when they were made the oil which was the subject of them was in course of interstate transportation.

The decree is affirmed.