ISLAND NEEDLEWORK, INC., Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 64. Argued December 17, 1945.—Decided February 20, 1946.

*J. J. Ortiz Alibrán* for petitioner. *E. Campos del Toro, Attorney*

*General,* and *J. B. Fernández Badillo,* Attorney of the Division of Tax Cases of the Department of Justice, for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The petitioning corporation has established its workshops in the city of Mayagüez, wherein it is engaged in doing needlework upon certain materials which are shipped to it from New York by Lande & Miskend, Inc., a corporation organized and domiciled in said State.

On December 23, 1942, the petitioner was notified of the levying upon it of a tax on personal property, for the fiscal year 1942–43, amounting to $980.24, on the basis of an assessment of $36,990. On February 23, 1943, the petitioner paid $185.24 as the portion of the tax with which it agreed, and on March 23 of that same year, it filed a complaint with the Court of Tax Appeals, challenging the balance of $795.

The petitioner alleged that the Treasurer had erred in increasing the assessment of its property from $6,990 to $36,990, as the increase of $30,000 represented merchandise belonging to Lande & Miskend, Inc., which had been brought temporarily to Puerto Rico in order to be subjected to certain work thereon and to be returned to its owner in New York; that said merchandise never acquired a permanent situs in Puerto Rico and in fact did not have such situs on January 15, 1943. The Treasurer maintained that the assessment made by him was correct, in accordance with the provisions of §§ 293 and 297 of the Political Code. The respondent tribunal dismissed the complaint, and the petitioner thereupon paid the tax under protest and instituted the present proceeding.

The Court of Tax Appeals stated the question submitted to it for decision, thus:

"As may be seen from the testimony of the witnesses above referred to and from the documentary evidence introduced, the ques-

tion to be decided by us is whether certain materials which arrive in Puerto Rico for the purpose of being processed in this island by an' entity residing therein, and which remain in Puerto Rico only during the time such process is effected, are subject to the payment of a property tax as property found in this island on January 15, the date on which the assessment should be made, according to § 298 of the Political Code.''

The first question which must be considered and determined by us, is whether the respondent tribunal correctly interpreted the law when it held that the merchandise which belonged to Lande & Miskend, Inc., of New York, and which was in the possession of the petitioner on January 15, 1942, could be lawfully assessed for taxation purposes here.

Section 297 of the Political Code, cited by the Treasurer in support of his action, provides in its pertinent part as follows:

''Section 297. That all personal property within or without Puerto Rico shall be assessed *to the owner thereof* in the Municipality in which he resides on the fifteenth day of January; except that such personal property as *goods, wares, merchandise, and other stock-in-trade;* . . . . horses and other livestock, *and all other personal property having a permanent location within a municipality* shall be assessed to the owner in the municipality in which it is thus situated; etc.'' (Italics ours.)

Section 293 of the same code reads thus:

''Section 293. Commision merchants and all persons dealing and trading on commission, assignees authorized to sell, *and persons having in their possession property belonging to another, subject to taxation in the assessment district where said property is found,* shall, for purposes of taxation, be deemed the owners of the property in their possession.'' (Italics ours.)

There is no controversy as to the facts. Lande & Miskend, Inc., domiciled in New York, sent to the petitioner merchandise valued at $30,000 for the specific purpose of having certain needlework performed thereon, and of returning the merchandise to its owner in New York once such work had

been completed. The merchandise was ordinarily returned to New York within four weeks after its arrival in Puerto Rico, and some of it within the 15 days following its receipt here. On January 15, 1942, the merchandise involved herein was kept on deposit in the workshops of the petitioner in Mayagüez.

We agree with the respondent tribunal that merchandise brought from another State into a State for the purpose of subjecting the same to a manufacturing process, at the completion of which the merchandise is to be returned to the State from which it was originally sent, should not be considered as merchandise in transit which, not having acquired a situs in the State where the manufacturing process takes place, is not subject to taxation. The decisions which we have examined hold that merchandise brought from another State into a State, under the circumstances already stated, is subject to taxation in the State where the manufacturing process has been carried out.[1]

The adjudicated cases hold that there is no constitutional prohibition against the taxing of articles of commerce which, instead of being in transit at the time of the imposition of the tax, have stopped to enjoy what is called an independent local advantage. Upon thus stopping, the merchandise acquires a situs for taxation purposes. *Susquehanna Coal Co.* v. *South Amboy,* 228 U.S. 665; *Bacon* v. *Illinois,* 227 U.S. 504. See note by T. R. Powell, 57 Harv. L. Rev. 1097, commenting on the case of *Northwest Airlines* v. *Minnesota,* 322 U.S. 292; Annotation, 153 A.L.R. 264, 270.

In *General Oil Co.* v. *Crain,* 209 U.S. 211, 52 L. ed. 765, the plaintiff was a corporation of the State of Tennessee which owned oil wells and refineries located in the State of Pennsylvania. From the latter State the oil was shipped in tanks cars to Tennessee, where it was placed in special tanks and later sent to the company's customers in other States.

---

[1] 51 Am. Jur. § 448 *et seq.,* and § 445, p. 470; Annotation, 110 A.L.R. 707, 726.

As the oil was not sold in Tennessee, the company refused to pay the inspection charges sought to be collected from it by the inspector of oils of that State, and alleged that the imposition of said charges was unconstitutional "because such inspection would be a regulation of and interference with interstate commerce, in violation of the Constitution of the United States, third clause, § 8, Article I."

The Federal Supreme Court, after reviewing the applicable decisions, held that the oil was subject to the payment of the inspection charges, saying:

"The company was doing business in the State, and its property was receiving the protection of the State. Its oil was not in movement through the State. It had reached the destination of its first shipment, and it was held there, not in necessary delay or accommodation to the means of transportation, as in *State &c.* v. *Engle, supra,*[2] but for the business purposes and profit of the company. It was only there for distribution, it is said, to fulfill orders already received. But to do this required that the property be given a locality in the State beyond a mere halting in its transportation. It required storage there—the maintenance of the means of storage, of putting it in and taking it from storage. The bill takes pains to allege this.

"*        *        *        *        *        *        *

"This certainly describes a business—describes a purpose for which the oil is taken from transportation, brought to rest in the State and for which the protection of the State is necessary, a purpose outside of the mere transportation of the oil."

In *Bacon* v. *Illinois,* 227 U.S. 504, 57 L. ed. 615, grain shipped from Southern and Western States for transportation to Eastern States, was removed from the railroad cars at Chicago and placed in a grain elevator, kept there by the owner of the grain, for the purpose of inspecting, cleaning, and sacking it, and thereafter turning it over to the railroad company for carrying it to the places to which it had been originally consigned. The State of Illinois imposed a tax on the shipment. The owner refused to pay it, on the ground

---

[2] 5 Vroom (N. J.) 425, 435.

that the imposition of the tax was unconstitutional. The Federal Supreme Court upheld its validity, saying:

"He had established a local facility in Chicago for his own benefit and while, through its employment, the grain was there at rest, there was no reason why it should not be included with his other property within the State in an assessment for taxation which was made in the usual way without discrimination."

The doctrine laid down in the above-cited decisions is applicable to the case at bar. Lande & Miskend, Inc., is engaged in the business of selling needlework goods in New York. The materials, such as cloth, thread, etc., necessary for the manufacture of said goods are sent from New York to Mayagüez, and remain in the latter place at rest, in the warehouses of Island Needlework, Inc., until they are reshipped to New York after completion of the work required for converting them into the finished product, which Lande & Miskend, Inc., sells to its customers. During the time said merchandise is stored in Mayagüez and subjected to the manufacturing process, it receives the protection of the Government of this Island, and it is therefore just that its owner should contribute in a like proportion as other property owners to the support of that government.

The respondent tribunal did not err in holding that the merchandise of Lande & Miskend, Inc., was subject to the payment of the tax sought to be collected by the Treasurer.

█ The petitioner insists that, even conceding that the merchandise was subject to the payment of a tax, the Treasurer erred in attempting to enforce such payment upon the petitioner instead of collecting the tax from Lande & Miskend, Inc., owners of the merchandise. The Treasurer maintains that § 293 of the Political Code, *supra,* authorizes him to collect the amount of the tax from the petitioner, as depositary of the merchandise.

The Treasurer is correct. We have already decided that under § 297, *supra,* the merchandise could be assessed in the

Municipality of Mayagüez, where it was found on January 15, 1942. We now hold that, according to § 293, *supra,* Island Needlework, Inc., could "for purposes of taxation be deemed the owners of the property in their possession." We see therefore that where property belonging to a nonresident is found in the possession of a resident, the law requires, as a means of collecting the tax, that the latter be paid by the person who holds the property. Since said person is in possession of the property, he is in a position to obtain a reimbursement from the owner of the property upon whom the burden of the tax should finally rest.

The amendment to § 293 of the Political Code which is set forth in Act No. 45 of May 2, 1945, does not have the scope attributed to it by the petitioner. The language of the proviso added to the original text of said Section, clearly shows that the amendatory provisions are applicable to future transactions and not to those already consumated under the former enactment.

The decision sought to be reviewed should be affirmed.

Mr. Justice Córdova did not participate herein.