AMERICAN STEAMSHIP COMPANY, APPELLEE,
*v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as *American Steamship Co. v. Limbach*
(1991), 61 Ohio St.3d 22.]

(No. 90–1094—Submitted April 17, 1991—Decided June 19, 1991.)

■■■■■■■■■■

*Jones, Day, Reavis & Pogue, Maryann B. Gall* and *Stephanie A. Brett,* for appellee.

*Lee I. Fisher,* Attorney General, and *Barton A. Hubbard,* for appellant.

WRIGHT, J.  The tax at issue in this appeal is Ohio's use tax, which establishes "an excise tax * * * levied on the storage, use, or other consumption in this state of tangible personal property [or the benefit realized in this state of any service provided]."  R.C. 5741.02(A).  Excepted from the tax, however, is the use of any property that, if acquired, would not be subject to Ohio's sales tax imposed under R.C. Chapter 5739.  R.C. 5741.02(C)(2).  R.C. 5739.02(B)(14) excepts from sales tax "[s]ales of ships or vessels used or to be used principally in interstate or foreign commerce, and repairs, alterations, fuel, and lubricants for such ships or vessels[.]"  This appeal requires us to answer one question:  Is a vessel used solely to ferry out-of-state goods from a transfer facility in Ohio to their final destination in Ohio engaged in interstate commerce?  The board ruled that such a vessel was used in interstate commerce.  We agree.

As a preliminary matter, the appropriate standard of review for appeals from the board merits comment. This court defers to decisions of the board provided such decisions are reasonable and lawful. *Highlights for Children, Inc. v. Collins* (1977), 50 Ohio St.2d 186, 187, 4 O.O.3d 379, 380, 364 N.E.2d 13, 15; *Hercules Galion Products, Inc. v. Bowers* (1960), 171 Ohio St. 176, 177, 12 O.O.2d 292, 168 N.E.2d 404, 405. This deference extends especially to the board's findings of fact. "It is simply not this court's function to overrule board findings of fact which are based upon sufficient probative evidence." *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 49, 19 O.O.3d 234, 236, 417 N.E.2d 1257, 1260. Under this standard of review we consider the case before us.

The commissioner argues that it is impossible for a vessel that does not leave the state to be engaged in interstate commerce, particularly where the owner of the goods has taken possession within the state prior to the intrastate portion of transit. The commissioner's argument stresses that Republic Steel owned the Lorain Pellet Terminal and therefore the American Republic was used solely to shuttle ore between two Republic Steel facilities within the state.

American Steamship responds that interstate commerce can involve intrastate operations. Particularly, American Steamship argues that the journey, begun in Minnesota, does not end until the ore reaches Republic Steel's mills in Ohio. Therefore, the American Republic's voyage between Lorain and the mills on the Cuyahoga is the final leg of an interstate journey that appears to be intrastate only because of the depth of the Cuyahoga River.

Through a line of cases defining when interstate commerce begins and ends for property tax purposes, American Steamship argues that the ore the American Republic carried was in interstate transit for property tax purposes until it reached the Cleveland mills. Because the ore was still in interstate commerce, the American Republic was used in interstate commerce. We accept American Steamship's contention that these cases provide the proper analysis to determine whether the American Republic was used in interstate commerce.

Generally, goods transported in interstate commerce are not taxable until they leave interstate commerce: " '[T]he states cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it. Similarly, the states may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a state and become subject to the power of the state to impose a nondiscriminatory property tax.' " *Minnesota v. Blasius* (1933),

290 U.S. 1, 9, 54 S.Ct. 34, 37, 78 L.Ed. 131, 135, quoted with approval in *Consolidation Coal Co. v. Porterfield* (1971), 25 Ohio St.2d 154, 157–158, 54 O.O.2d 277, 280, 267 N.E.2d 304, 307.

Accordingly, in property tax cases, courts look for a "taxable moment," *i.e.,* an occurrence signalling departure from interstate commerce. *Consolidation Coal, supra,* at 158, 54 O.O.2d at 280, 267 N.E.2d at 307. See, also, *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 177, 59 S.Ct. 389, 393, 83 L.Ed. 586, 593; *Pacific Tel. & Tel. Co. v. Gallagher* (1939), 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595. In this case, if the ore left interstate commerce upon arrival in Lorain, then the subsequent intrastate journey would occur after such a "taxable moment."

American Steamship directs the court's attention to two United States Supreme Court cases in support of its position. While not directly on point, these cases set forth the relevant inquiry as to whether the ore left interstate commerce upon arrival in Lorain.

In *Coe v. Errol* (1886), 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715, the United States Supreme Court announced that navigational delays do not take goods out of interstate commerce once it has begun:

"This question does not present the predicament of goods in course of transportation through a State, though detained for a time within the State by low water or other causes of delay, as was the case of the logs cut in the State of Maine, the tax on which was abated by the Supreme Court of New Hampshire. Such goods are already in the course of commercial transportation and are clearly under the protection of the Constitution." *Id.* at 525, 6 S.Ct. at 477, 29 L.Ed. at 718.

The court was later presented with a similar case in *Hughes Brothers Timber Co. v. Minnesota* (1926), 272 U.S. 469, 47 S.Ct. 170, 71 L.Ed. 359. In *Hughes,* Minnesota levied a personal property tax on logs placed onto a frozen tributary to the Pigeon River, which forms the border between Minnesota and Ontario. With the arrival of the spring thaw, the logs were to float down stream to the mouth of the Pigeon River at Lake Superior where the buyer was to load the logs onto ships for their continued journey to Michigan. In holding that the logs were already in interstate commerce, the court found that the contractual arrangement between buyer and seller bound the logs to interstate shipment:

" * * * Both parties intended interstate shipment, they had bound themselves to it, the logs were segregated and were moving in the contemplated journey which neither could prevent if they carried out their agreement. The delays in the continuity of movement were only incidental to the journey and the necessary change in the mode of transportation by which the logs were

carried from a place in one State to a place agreed upon in another." *Id.* at 475, 47 S.Ct. at 172, 71 L.Ed. at 362.

While this passage finds significance in the contractual obligations peculiar to the facts of the case, the court went on to give guidance where the owner controls the property and an interruption in the journey occurs:

"The mere power of an owner to divert the shipment already started does not take it out of interstate commerce, if the other facts show that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation * * *." *Id.* at 476, 47 S.Ct. at 172, 71 L.Ed. at 362. This statement of the law appears to control the outcome here.

The commissioner argues that other cases applying *Coe* and *Hughes* establish that taking possession of the goods ends interstate commerce. The commissioner relies on *Blasius, supra,* and *Bacon v. Illinois* (1913), 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615. However, instead of establishing that accepting possession ends interstate commerce, these cases, particularly *Blasius,* support the test in *Hughes.* The operative inquiry is not decided solely by ownership or control, but rather asks whether the break in transit is for a purpose other than furthering transit. See *Bacon, supra,* at 512–517, 33 S.Ct. at 301–303, 57 L.Ed. at 618–621; *Blasius, supra,* 290 U.S. at 9–10, 54 S.Ct. at 36–37, 78 L.Ed. at 135–136.

In this case, the board found no purpose for the Lorain Pellet Terminal other than to assist in the economical transportation of ore to Republic's mills on the Cuyahoga. Ore was not mined in Minnesota unless needed at the mills. Republic Steel had no use for the ore at the Lorain facility. Any layover in Lorain was unintended and due solely to weather conditions inhibiting continued transit.

The board's finding that the Lorain terminal was used *solely* in furtherance of transportation is supported by sufficient probative evidence and we will not and should not disturb this factual assessment. Thus, we hold that the ore shipped on the American Republic was still in interstate commerce and the American Republic was therefore used in interstate commerce within the meaning of R.C. 5739.02(B)(14) and 5741.02(C)(2). Accordingly, the lease payments made on American Republic were not subject to Ohio's use tax.

Because it is both reasonable and lawful, the decision of the board is affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT and RESNICK, JJ., concur.

DOUGLAS and H. BROWN, JJ., dissent.