OPINION
This appeal is taken by Appellant, Brandy's, Inc. (hereinafter "Brandy's"), from the October 12, 2001 judgment entered by the Ohio Board of Tax Appeals affirming the sales tax assessment issued by the Ohio Tax Commissioner.
Brandy's is a nightclub located in Findlay, Ohio, which sells a variety of alcoholic beverages and sodas for consumption on the premises. Among the alcoholic beverages that Brandy's sells are beer in cans, beer in bottles, draft beer, mixed alcoholic drinks, wine, and shots of alcohol. In September 1995, a search warrant was executed at Brandy's, wherein various business records of Brandy's were seized. Included in these records were purchase invoices, as well as daily sales recaps and cash register tapes, which reflected only gross sales without showing whether taxes were collected thereon.
Shortly after the seizure of Brandy's records, Kevin Heckman, an examiner for the Ohio Tax Commission, conducted an audit of Brandy's for the May 1, 1992 — July 31, 1995 tax period. After examining Brandy's records, specifically the sales figures, Heckman compared those to the sales tax returns filed by Brandy's. The figures reflected more sales than were reported on the returns. As a result, Heckman decided to examine the purchases of beer, wine, and liquor made by Brandy's during the audit period in order to determine the amount of sales tax that should have been remitted to the State.
As part of his investigation into Brandy's purchases, Heckman obtained records from the State of Ohio of the purchases of alcohol made by Brandy's and examined Brandy's purchase invoices, which were seized during the search. In addition, Heckman compared the information obtained from the State, through spot-checking, to the purchase invoices contained in Brandy's seized records and found no notable discrepancies. The tax commission also issued a letter to Brandy's, informing it of the information that it had regarding purchases made by Brandy's and requesting that Brandy's supply the commission with any other records pertaining to Brandy's purchases or sales of tangible personal property during the audit period within ten days of receipt of the letter. Brandy's did not provide the commission with any other records in response to the ten-day letter sent by the commission.
After affording Brandy's an opportunity to supplement the information already before the tax commission, Heckman then completed his audit of Brandy's. Based upon the purchase records and a detailed price list of Brandy's sales prices for various drinks, which Brandy's prepared for its own staff, Heckman determined an average price per ounce of the liquor that Brandy's purchased from various vendors. Also, in determining draft beer sales, Heckman based the number of draft beers that could be poured from a half barrel keg of beer on sales utilizing a nine ounce Pilsner glass, having found records among those seized that Brandy's had purchased a number of these glasses. However, Heckman did not take possible spillage, leakage, theft, or drink specials into consideration in determining the purchase to sale ratio during the audit period, nor did he estimate any possible beer pitcher sales. Notably, in determining the sales price to apply to these beverages, Heckman relied solely upon Brandy's own detailed price list rather than a pre-set dollar amount or another amount from a similar type of establishment.
After conducting the audit, Heckman prepared a detailed statement, entitled "Examiner's Remarks", describing how he conducted the audit and what he found during his investigation. Based upon the information before him, Heckman determined that Brandy's should have reported $139,842.32 in sales tax during the audit period. However, Brandy's only reported $17,749.41 during this time. Heckman then made a recommended assessment of $159,037.53, based upon the total tax, late filing charge, interest, and penalties.
Brandy's petitioned the Department of Taxation for reassessment of the sales tax owed. Counsel for Brandy's also had Carl Moses, a certified public accountant, examine Brandy's records to determine the amount of sales tax that should have been remitted during the audit period. Moses, too, found that Brandy's had underreported the amount of sales tax liability, which prompted him to prepare amended sales tax returns on behalf of Brandy's. However, Moses concluded that Brandy's sales tax liability for the audit period totaled $41,920.05.
On July 15, 1997, a hearing was held regarding Brandy's petition for reassessment. The Tax Commissioner issued his final determination in this matter on November 30, 1999. He upheld Heckman's assessment but made the following adjustment, having found that one of the purchases used in determining sales tax was improper:
ASSESSMENT PENALTY TOTAL
 — Sales Tax $102,050.12 $15,307.52 $117,357.64 — Pre-assessment Interest $15,765.73 $0.00 $15,765.73
Total — $133,123.37
The Commissioner also noted that Brandy's had made payments totaling $41,144.08 as of the time of his determination. Brandy's then appealed the Commissioner's determination to the Board of Tax Appeals. The Board affirmed the Tax Commissioner's determination on October 12, 2001. This appeal followed, and Brandy's now asserts one assignment of error.
 THE DECISION OF THE BOARD OF TAX APPEALS IS UNREASONABLE AND UNLAWFUL AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In reviewing a decision by the Board of Tax Appeals, this Court must determine if the decision was reasonable and lawful. R.C. 5717.04. If its decision is reasonable and lawful, this Court must affirm. Id. These statutory guidelines are reinforced by case law. The Ohio Supreme Court has previously stated that "[t]he function of this court is to review the board's decision to determine if it is reasonable and lawful."Highlights for Children, Inc. v. Collins (1977), 50 Ohio St.2d 186, 187
(citing Citizens Financial Corp. v. Porterfield (1971), 25 Ohio St.2d 53). In addition, "[i]t does not matter whether we might have weighed the evidence differently from the board had this court been making the original determination. As long as there is evidence which reasonably supports the conclusion reached by the board, its decision must stand."Highlights for Children, Inc., 50 Ohio St.2d at 187-188 (citing JewelCompanies v. Porterfield (1970), 21 Ohio St.2d 97, 99); see alsoAmerican Steamship Co. v. Limbach (1991), 61 Ohio St.3d 22, 24.
This Court has previously held that we are "bound by the record that was before the Board of Tax Appeals and may not substitute [our] judgment for that of the board." Mobile Instrument Serv. Repair, Inc. v. TaxComm'r. (Dec. 6, 2000), Logan App. No. 8-2000-20, unreported, 2000 WL 1783574 (citing Denis Copy Co. v. Limbach (1992), 76 Ohio App.3d 768). Likewise, determining the credibility of the witnesses and the weight of the evidence is within the discretion of the Board. Youngstown Sheet Tube Co. v. Mahoning County Bd. of Revision (1981), 66 Ohio St.2d 398,401 (citations omitted). Moreover, the Ohio Supreme Court has previously held "that when an assessment is contested, the taxpayer has the burden `* * * to show in what manner and to what extent * * *' the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect." Federated Dept. Stores,Inc., Rike-Kumler Division v. Lindley (1983), 5 Ohio St.3d 213, 215
(quoting Midwest Transfer Co. v. Porterfield (1968), 13 Ohio St.2d 138,141) (further citations omitted). Therefore, the taxpayer bears the burden of demonstrating to this Court that the determination of the Board is unreasonable and unlawful. Hatchadorian v. Lindley (1986),21 Ohio St.3d 66, 69.
Brandy's contends that the Board's determination was unreasonable and unlawful because the audit was not based upon its actual sales records, which it claims were sufficient to determine its amount of sales tax liability.[1] In support of this contention, Brandy's relies upon an Ohio Supreme Court decision, which provides that
 a sales-tax assessment is unreasonable and unlawful, where the Tax Commissioner disregarded the vendor's books and records and determined the amount of such assessment by a partial audit and computations resulting from the application of a so-called `usual accepted markup' to the cost of the vendor's purchases * * * without evidence supporting the validity or correctness of such markup or percentages.
Bloch v. Glander (1949), 151 Ohio St. 381, paragraph four of the syllabus. As evidence that its records were sufficient to determine tax liability, Brandy's presented the testimony of Carl Moses.
Moses testified that he used the totals from Brandy's daily recap sheets to determine its sales tax liability, which prompted him to prepare amended sales tax returns. Moses then compared the recap totals to Brandy's bank statements, which were seized during the search, and found that the deposit totals matched the recap totals. He also compared the sales numbers that he calculated to Brandy's federal income tax returns and found them to be within $1,000.00 of each other. However, Moses also testified that in 1994, the figures were dissimilar by $20,000.00 or $30,000.00. In addition, Moses testified that he compared his determination as to the sales totals of Brandy's with two different reports, which provide information regarding businesses similar to Brandy's, in order to determine whether these numbers were similar to industry percentages. Moses then testified that he was of the opinion that the amended returns prepared by him were accurate based upon the information that he had.
Ohio law provides that "[e]ach vendor shall keep complete and accurate records of sales, together with a record of the tax collected on thesales, which shall be the amount due under sections 5739.01 to 5739.31 of the Revised Code, and shall keep all invoices, bills of lading, and other such pertinent documents." R.C. 5739.11 (emphasis added.). In addition,
 where a vendor does not have adequate records of receipts from his retail sales in excess of fifteen cents * * * the tax commissioner may refuse to accept the vendor's return, and upon the basis of test checks of the vendors business for a representative period, and other information relating to the sales made by such vendor, determine the proportion that taxable retail sales bear to all his retail sales.
R.C. 5739.10(B) (emphasis added.). In furtherance of these statutes, the Ohio Administrative Code provides the following:
 Each vendor must maintain complete and accurate records
which include both:
 (1) Primary records such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;
 (2) Secondary records such as bank deposit receipts and daybooks, journals, or any other records in which accumulated data is recorded.
 Any record in which accumulated data is recorded by the vendor must be supported by complete detail records from which such data was accumulated.
 Sales invoices and cash register tapes for taxable sales must have separately stated thereon the total price and the tax amount charged[.]
O.A.C. 5703-9-02(A) (emphasis added.). The Administrative Code then provides the types of information by which the Tax Commissioner may determine the sales tax liability of a retailer that fails to maintain complete primary sales records, which are: "(i) purchase records, (ii) a sampling of the vendor's business activity for a representative period, and/or (iii) other information relating to the sales made by such vendor." O.A.C. 5703-9-02(B)(2). The overriding purpose of these statutory laws and administrative regulations is to enable the Tax Commissioner to readily ascertain a retailer's sales tax liability.
In this case, the parties do not dispute that the cash register tapes do not delineate sale totals from sales tax. Rather, the method by which drink sales were recorded, apparently, was to charge a flat fee and then enter that amount into the register. Thus, if a bottle of beer was sold, the bartender would simply enter a dollar amount into the register without indicating any sales tax amount. In addition, while the cash register had categories for beer, liquor, and soda, Brandy's provided testimony from its own staff indicating that those categories were often improperly used. For example, when selling soda, the bartender might often ring it in as beer instead. Finally, the cash register tapes did not reveal whether these were sales by the glass, the pitcher, a multi-liquor beverage, or any other mode of sale. When asked whether the sales records maintained by Brandy's were sufficient for him to determine whether the proper amount of sales tax had been collected by Brandy's, Heckman replied, "I recall seeing some cash register tapes, but to see how they arrived at those cash register tapes, I don't recall seeing any guest checks or guest receipts, anything to verify those were the actual numbers."
On the other hand, Carl Moses testified that he derived the amount of sales tax liability by taking "their daily sheets, totalled (sic) them, and determined what the total sales were, which included sales tax, and [he] calculated the net sales and multiplied that times the tax rate to determine the tax." In short, he confirmed that Brandy's did not collect sales tax on individual sales, but concluded, rather, that "[t]hey charged the total dollar amount and then paid the tax. So we determined what the sale was * * * by dividing the sales dollar by 1.055 percent, to determine the actual dollar sales, and then multiplied that times five-and-a-half percent to determine the sales tax rate."
According to the Administrative Code, the cash register tapes of Brandy's are considered primary records. The daily recap sheets are records of accumulated data, which the Administrative Code considers secondary records. Thus, it is clearly intended that the tapes must be complete and detailed records by which the recap sheets are supported. However, in order to be complete and accurate, these tapes must reflect the total price of purchases and the tax collected thereon.
In this case, it is not clear that the tapes of Brandy's reflect the sales prices. Nor do these tapes readily show from where the daily recap totals are derived. While the totals on these various tapes do match the recap sheets, how these numbers came into being is not readily ascertainable, as noted by Heckman. For instance, the five figures represented on the register tape for April 2, 1994, 25.00, 152.75, 344.75, 52.00, and 416.25, which were admitted into evidence, equal the total amount stated on the recap sheet, $990.75, for that date. However, these numbers provide no indication of evidencing individual drink sales, and, in fact, what these numbers do represent is unclear. Moreover, Brandy's presented no supporting evidence to indicate what the numbers on any of the register tapes represented or how they were derived.
In sum, it is clear from the face of the register tapes and the evidence pertaining thereto in the record, that these tapes are not adequate records of sales receipts by which to assess sales tax liability. Therefore, the Tax Commissioner properly exercised his discretion in choosing not to accept Brandy's sales tax return and in contacting those from whom Brandy's made purchases in order to determine the proportion that taxable retail sales bore to all of Brandy's retail sales. See Perry Oil Co. v. Limbach (Nov. 5, 1992), Allen App. No. 1-92-41, unreported, 1992 WL 328490. Furthermore, contrary to the contention of Brandy's that the proper amount of sales tax liability for the audit period is reflected in the amended returns prepared by Moses, Moses did not testify that he was able to use the primary records, but rather, that he used the daily recap totals to arrive at the amount of liability. Thus, the Board of Tax Appeals did not act unreasonably or unlawfully by accepting Heckman's assessment over Moses' determination.
Lastly, Brandy's maintains that Heckman's assessment was faulty and incorrect because he did not take certain factors into consideration, such as spillage, leakage, theft, and various drink specials. Brandy's contends that although it made the purchases upon which Heckman based his assessment, these unconsidered factors reduce the possible amount of taxable sales that Brandy's could have made. In support of this assertion, Brandy's presented evidence that these unconsidered factors actually exist in the bar business and, in fact, existed during the audit period. However, the only evidence as to specific dollar amounts, percentages, or an actual amount of alcohol that was purchased but never sold because of these factors presented by Brandy's was the affidavit of another operator of a bar, who never testified before the Board and was never subjected to cross-examination. Thus, Brandy's failed to adequately demonstrate the extent of the effect, if any, that these factors had on its sales tax liability for the audit period, and as the trier of fact, the Board acted within its discretion in choosing not to rely upon this affidavit.
Given the inadequate status of Brandy's records, the failure of Brandy's to show exactly how Heckman's assessment was faulty and incorrect, and the fact that the Tax Commissioner supported its method of tax assessment by using Brandy's own price list and purchase invoice records rather than disregarding Brandy's records, Brandy's has failed to meet its burden of showing the unreasonableness or unlawfulness of the Tax Commissioner's assessment. Therefore, the assignment of error is overruled.
For all of these reasons, the determination of the Board of Tax Appeals is affirmed.
Judgment affirmed.
HADLEY and WALTERS, J.J., concur.
[1] On appeal, Brandy's also seems to contest the method and information used by Heckman to determine sales tax liability. However, this argument, which was first mentioned during oral argument by Brandy's counsel, was not raised in any of the proceedings below and was not briefed to this Court. Thus, the only properly preserved issue in this case is whether the records of Brandy's, which were seized during the September 1995 search, were a sufficient source of information by which to determine its sales tax liability. Nevertheless, we note that we have found no authority, nor has Appellant directed us to any, to indicate that Heckman's method of determining tax liability in this case was unauthorized by law or otherwise invalid.