DIAMOND SHAMROCK REFINING
AND MARKETING COMPANY,
Petitioner,

v.

NUECES COUNTY APPRAISAL DIS-
TRICT and the Appraisal Review Board
of the Nueces County Appraisal District,
Respondents.

No. D–3982.

Supreme Court of Texas.

Argued Jan. 19, 1994.

Decided April 20, 1994.

Rehearing Overruled June 15, 1994.

Edward Kliewer, III, Kenneth L. Malone, San Antonio, for petitioner.

Russell R. Graham, Peter W. Low, Austin, for respondents.

PHILLIPS, Chief Justice, delivered the opinion of the Court in which all Justices join.

In this case we consider whether oil which is imported from abroad directly into Texas, which is its final destination, may be taxed while in transit within Texas under the Import–Export Clause and the Commerce Clause of the United States Constitution. We hold that it may, and we therefore affirm the judgment of the court of appeals. 853 S.W.2d 212.

Diamond Shamrock brought this action as a petition for review under the provisions of Chapter 42 of the Texas Property Tax Code, challenging the determination by the Nueces County Appraisal District and the Nueces County Appraisal Review Board that certain crude oil owned by Diamond Shamrock was taxable for the years 1988, 1989 and 1990. The parties tried this case upon an agreed statement of facts pursuant to Tex.R.Civ.P. 263.

The oil in question was shipped from foreign sources through the Gulf of Mexico, offloaded at the Harbor Island storage facility in Nueces County, held there in tanks, and transmitted by pipeline to Diamond Shamrock's refinery in Three Rivers, Live Oak County, Texas. Some of Diamond Shamrock's crude oil was always present at Harbor Island between 1987 and 1990, although the particular oil in the tanks on January 1, 1988, 1989 and 1990 was actually present for a maximum period of 12 to 25.3 days. The government provides services to the Harbor Island facility in general and to Diamond Shamrock's crude oil in particular.

The parties stipulated that the grounds of Diamond Shamrock's complaint were as follows:

Plaintiff [Diamond Shamrock] protested the inclusion of its property on such appraisal rolls to Defendant, the Appraisal Review Board, pursuant to Chapter 41 of the Texas Property Tax Code on the ground that such property was not subject to ad valorem taxation in Texas for tax years 1988, 1989 and 1990, because such taxation is precluded by the Commerce Clause and the Import/Export Clause of the United States Constitution. Plaintiff did not protest the situs in Texas at which the property is taxed, nor its market value, and neither is at issue in these cases.

The trial court decreed that the oil in question was exempt from taxation by Nueces County for the tax years in question, and it ordered that the property be deleted from the applicable appraisal rolls for those tax years. The court of appeals reversed, rendering judgment that Diamond Shamrock's oil in Nueces County is not exempt property under either the Commerce Clause or the Import–Export Clause of the United States Constitution.

In this Court, Diamond Shamrock contends that, under both the Import–Export Clause and the Commerce Clause of the United States Constitution, U.S. CONST. art. I, § 10, cl. 2 and § 8, cl. 3, the oil is not taxable in Nueces County because it is "in transit." To support this proposition, Diamond Shamrock cites, e.g., *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986); *Department of Revenue v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976); *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.*, 900 F.2d 816 (5th Cir.1990), *cert. denied*, 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 207 (1990); *City of Farmers Branch v. Matsushita Elec. Corp.*, 537 S.W.2d 452 (Tex.1976); and *Calvert v. Zanes–Ewalt Warehouse, Inc.*, 502 S.W.2d 689 (Tex.1973), *appeal dism'd*, 416 U.S. 923, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974). The District counters that none of the evils prevented by application of the Import–Export Clause or the Commerce Clause are implicated by its taxation of Diamond Shamrock's oil, and that Diamond Shamrock should pay for the government services provided to its property.

Under these facts, we do not resolve a number of significant questions. For instance, we do not decide whether oil passing through Texas on its way to a foreign country or to another State is taxable under the Import–Export Clause or the Commerce Clause. Nor do we decide whether oil arriving in Texas from another State is taxable. Rather, the only question presented is whether oil that enters Texas from a foreign country and reaches its ultimate destination here may, under the United States Constitution, be taxed in a particular Texas county, despite the fact that it is still "in transit" while there.

### I.

The Import–Export Clause of the United States Constitution states:

No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net product of all duties and imposts laid by any State on imports or exports, shall be for the use of the treasury of the United States: and all such laws shall be subject to revision and control of the Congress.

U.S. CONST. art. I, § 10, cl. 2. The leading case interpreting this Clause is *Michelin*

*Tire Corporation v. Wages*, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976), which overruled earlier cases to adopt a new analytical framework, thereby creating "a fundamentally different approach to cases claiming the protection of the Import–Export Clause." *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 359, 104 S.Ct. 1837, 1841, 80 L.Ed.2d 356 (1984) (*"Hooven II "*). *See also Department of Revenue v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 752, 98 S.Ct. 1388, 1400, 55 L.Ed.2d 682 (1978).

*Michelin* involved a challenge to a county ad valorem property tax on tires imported from France and Nova Scotia which were being held in a wholesale distribution warehouse. From there, the tires were distributed to franchised dealers in six southeastern states. *Michelin*, 423 U.S. at 278–80, 96 S.Ct. at 537–38. The Court upheld the tax, holding that it did not offend the three policies underlying the Import–Export Clause, to wit:

> [ (1) ] the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistent with that exclusive power; [ (2) ] import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and [ (3) ] harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the inland States not situated as favorably geographically.

*Id.* at 285–86, 96 S.Ct. at 540–41.[1]

Because the tax was a nondiscriminatory property tax, the Court held that it did not violate either the "one voice" policy or the "federal revenue enhancement" policy. *Id.* at 286, 287, 96 S.Ct. at 541, 541. As to the "harmony between the States" policy, *Michelin* likewise held that "nondiscriminatory ad valorem property taxes do not interfere with the free flow of imported goods among the States." *Id.*, 423 U.S. at 288, 96 S.Ct. at 542. Although such taxes may increase the cost of goods purchased by "inland" consumers, such taxation is merely a quid pro quo for benefits actually conferred by the State. Thus, "[t]here is no reason why local taxpayers should subsidize the services used by the importer." *Id.* at 289, 96 S.Ct. at 542. The Clause was intended to prevent certain geographically situated States from being able to impose "exactions which were no more than transit fees on the privilege of moving through a State," and thus "[a] nondiscriminatory ad valorem property tax obviously stands on a different footing." *Id.* at 290, 96 S.Ct. at 543.

*Michelin* went on, however, to qualify its holding slightly for goods "merely in transit through the State," stating that "to the extent there is any conflict whatsoever with this purpose of the Clause, it may be secured merely by prohibiting the assessment of even nondiscriminatory property taxes on goods which are merely in transit through the State when the tax is assessed." *Id.*, 423 U.S. at 290, 96 S.Ct. at 543.

■ Pointing to the parties' stipulation that its crude oil is "in transit" while in Nueces County, Diamond Shamrock argues that the tax here falls within the "merely in transit" qualification. We disagree. The tax in question here does not in any way impinge on the third "harmony among the States" policy of the Import–Export Clause. Although still on its foreign import journey and

---

**1.** By these policies, the Framers sought to cure one of the "major defects" of the Articles of Confederation, namely "the fact that the Articles essentially left the individual States free to burden commerce both among themselves and with foreign countries very much as they pleased." *Michelin*, 423 U.S. at 283, 96 S.Ct. at 539.

The Supreme Court has since explained its new approach as follows:

To repeat: we think it clear that this Court in Michelin specifically abandoned the concept that the Import–Export Clause constituted a broad prohibition against all forms of state taxation that fell on imports. Michelin changed the focus of Import–Export Clause cases from the nature of the goods as imports to the nature of the tax at issue. The new focus is not on whether the goods have lost their status as imports but is, instead, on whether the tax sought to be imposed is an "Impost or Duty."

*Hooven II*, 466 U.S. at 360, 104 S.Ct. at 1842. *See also Reynolds Tobacco*, 479 U.S. at 153, 107 S.Ct. at 513.

in that sense "in transit,"[2] the oil in question here entered *only* the State of Texas and, according to the stipulated facts, never left Texas in its crude oil form. Thus, there simply was no opportunity for harmony between the states to be disturbed.[3] Read in context, the *Michelin* Court's qualification clearly applies only to goods in transit through the state *to or from another state* and not to goods merely in transit within the only state the goods ever enter. *See* Robert C.W. Frantz, Comment, *Constitutional Law—Nondiscriminatory Ad Valorem Tax May Be Applied To Imports,* 30 RUTGERS L.REV. 193, 197 (1976) (defining the "transit" discussed by the *Michelin* Court as "i.e., travelling through the importing state en route to another"). Under the Import–Export Clause, the oil is taxable in Texas. Where in Texas—Nueces County, Live Oak County or elsewhere—is not a subject governed by that Clause.

## II.

■ The Commerce Clause of the United States Constitution grants Congress power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. CONST. art. I, § 8,

cl. 3. Modern analysis of this Clause is governed by *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 288, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326 (1977), where the Court abandoned the abstract notion that interstate commerce "itself" cannot be taxed by the States. *See D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 30, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21 (1988). In *Complete Auto,* the Supreme Court set out a four-pronged test, requiring a valid state tax to: 1) apply to an activity with a substantial nexus with the taxing state; 2) be fairly apportioned; 3) not discriminate against interstate commerce; and 4) be fairly related to the services provided by the State. *Complete Auto,* 430 U.S. at 279, 287, 97 S.Ct. at 1079, 1083. When, as here, the state tax is on foreign, rather than merely interstate, commerce, the tax also must not: 1) create a substantial risk of international multiple taxation; or 2) prevent the federal government from speaking with one voice in its regulation of commercial relations with foreign governments. *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 1823, 60 L.Ed.2d 336 (1979).

■ Diamond Shamrock argues that the tax here cannot pass the first and fourth prongs of the *Complete Auto* test because the goods are "in transit."[4] We disagree.[5] The

---

2. We agree with Diamond Shamrock that, in stating that the oil in question was not "in transit" because it was held in storage for a business purpose, as opposed to being held in storage merely to accommodate its transportation into the pipeline to Three Rivers, the court of appeals made an impermissible inference that conflicts with the facts as stipulated by the parties in this Agreed Case under TEX.R.CIV P. 263. We do not agree, however, that the court's judgment was grounded on this fact. To the contrary, the court held that "the concept of 'in transit' loses any rational meaning" once the purposes of the Import–Export Clause have been satisfied. 853 S.W.2d at 216.

3. Likewise, the "in transit" nature of the oil does not bring its taxation in Nueces County into conflict with the first two policy prongs of the Import–Export Clause, as identified in *Michelin.* Although a tax on goods in transit into the foreign export stream of commerce may negatively impact the "one voice" policy, *see Louisiana Land,* 900 F.2d at 821, it is clear under *Michelin* that a nondiscriminatory ad valorem tax on imported goods does not violate either of the first two policy prongs of the Clause, regardless of whether the goods are in transit or not.

4. Diamond Shamrock does not argue that the second and third prongs of *Complete Auto* are not met in this case. Even if there was a question of fair apportionment, it would have to be answered under Texas law since the oil is only being taxed in the State of Texas. The Supreme Court in *Goldberg v. Sweet,* 488 U.S. 252, 260–61, 109 S.Ct. 582, 588–89, 102 L.Ed.2d 607 (1989) noted that the central purpose behind the apportionment requirement of *Complete Auto* is "to ensure that each State taxes only its fair share of an interstate transaction." There is no possible question that this nondiscriminatory ad valorem tax fails the third prong of the test. Likewise, there is no question that the two additional tests of *Japan Line* are met in this case. The "one voice" requirement of *Japan Line* is the same as that required by *Michelin,* according to the Supreme Court in *Itel Containers Int'l Corporation v. Huddleston,* —— U.S. ——, ——, 113 S.Ct. 1095, 1105, 122 L.Ed.2d 421 (1993), and *Michelin* held that nondiscriminatory ad valorem taxes do not conflict with this policy. And, no issue of potential multiple international taxation is raised by the stipulated facts of this case.

5. We likewise reject Diamond Shamrock's argument that the District waived error under the

essence of Diamond Shamrock's argument is that because the oil is by stipulation "in transit" through Nueces County, it did not have the required nexus with the county to allow the tax. As the oil was at all times "entering, exiting, or passing through" the county, there was no "incidence" to justify taxation. As the Supreme Court held in *Quill Corp. v. North Dakota,* — U.S. —, —, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91 (1992), the first and fourth prongs of *Complete Auto* "limit the reach of the State taxing authority so as to ensure that State taxation does not unduly burden interstate commerce." *See also Itel Containers Int'l Corp. v. Huddleston,* — U.S. —, —, 113 S.Ct. 1095, 1104, 122 L.Ed.2d 421 (1993) (compliance by a tax with all four prongs of *Complete Auto* confirms "both the State's legitimate interest in taxing the transaction and the absence of an attempt to interfere with the free flow of commerce, be it foreign or domestic"). As with the Import–Export

Clause, however, the "transit" at issue here is entirely within the State of Texas. Thus, the issue presented is whether satisfaction of the *Complete Auto* nexus requirements is precluded by that "transit," such that the taxation of foreign oil entering and remaining in only one state unduly burdens or interferes with foreign commerce.[6]

Obviously, where the four prongs of *Complete Auto* are not met, goods are not taxable under the Commerce Clause whether or not they are "in transit." And, the circumstances which make the goods "in transit" may inform a court's decision that the first and fourth nexus requirements of *Complete Auto* are not met. For instance, if oil in tanks on trucks merely passed through Nueces County without stopping, it would be "in transit" in a way that would cause it to have little or no nexus with the county. But under other circumstances, as in this case, there can be sufficient nexus to support a tax even if goods are technically "in transit."[7]

Commerce Clause. The District's point of error to the court of appeals, complaining that the trial court erred by finding the property exempt from taxation, was broad enough to preserve error on both constitutional grounds.

6. We note that while the "transit" at issue here involves foreign goods that enter only one state and remain there, all but one of the many cases cited by Diamond Shamrock for the proposition that goods "in transit" are not taxable under the Commerce Clause involve taxes on goods "in transit" through one State on the way to or from another State or on the way to a foreign country. *See, e.g., Michigan–Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 164–70, 74 S.Ct. 396, 399–403, 98 L.Ed. 583 (1954) (considering Texas tax on occupation of "gathering gas" where the taxable incidence was the taking of gas for the purpose of immediate interstate transmission); *Hughes Bros. Timber Co. v. Minnesota,* 272 U.S. 469, 474, 47 S.Ct. 170, 172, 71 L.Ed. 359 (1926) (considering Minnesota tax on goods already on way to Michigan); *State v. Anderson, Clayton & Co.,* 92 F.2d 104, 107 (5th Cir.1937) (considering tariff within Texas on cotton destined for foreign countries and other States), *cert. denied,* 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578 (1937); *Calvert v. Zanes–Ewalt Warehouses, Inc.,* 502 S.W.2d 689, 692–93 (Tex.1973), *appeal dism'd,* 416 U.S. 923, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974) (considering cigarette tax on cigarettes received in interstate commerce); *County of Harris v. Xerox Corporation,* 619 S.W.2d 402, 406 (Tex.Civ.App.—

Houston [1st Dist.] 1981. writ ref'd n.r.e.), *rev'd on other grounds,* 459 U.S. 145, 103 S.Ct. 523, 74 L.Ed.2d 323 (1982) (considering tax on goods in customs bonded warehouses in Houston awaiting sale and shipment to foreign country); *American S.S. Co. v. Limbach,* 61 Ohio St.3d 22, 572 N.E.2d 629, 631–32 (1991) (considering use tax on vessel used to ferry out-of-state goods from transfer facility in Ohio to final destination in Ohio); *Board of Educ. v. Property Tax Appeal Bd.,* 106 Ill.App.3d 82, 62 Ill.Dec. 20, 21, 23, 435 N.E.2d 818, 819, 821 (1982) (considering Illinois tax on crude oil in transit from Oklahoma to Indiana). Diamond Shamrock cites *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697 (11th Cir.1986), a case decided under the Carmack Amendment to the Interstate Commerce Act, which involves facts similar to those here and states in dicta that "modern interstate commerce analysis" is used to exempt goods in transit in foreign commerce from taxation. The court supports this proposition by citing *Michelin* which, for the reasons discussed above, does not lead us to the conclusion that goods in foreign commerce transit which enter only one state are exempt from taxation, under either the Import–Export Clause or the Commerce Clause.

7. Our holding today is limited to foreign goods "in transit" through only one state, which remain in that state. Even as to goods in interstate commerce, however, the question of whether Diamond Shamrock's "in transit" argument has any remaining validity under the modern Commerce Clause analysis is questionable, at least as

This distinction is clear in our law. In *Exxon Corp. v. San Patricio County*, 822 S.W.2d 269 (Tex.App.—Corpus Christi 1991, writ denied), the county sought to tax oil which was held in pipeline company tanks for an average of only seventeen days awaiting shipment in the pipeline. In holding that the property had attained situs under the Texas situs statute, TEX.TAX CODE ANN. § 21.02 (Vernon 1982), the court explained:

> We do not agree that when determining whether a large quantity of oil is to be taxed we should consider the situs of each individual barrel separately.... We do not view this mass of oil as a continual flow of singular barrels which independently do not remain in the County long enough to establish a tax situs there. Rather, because Exxon held a quantity of over 400,-000 barrels of oil in San Patricio County in seventeen tanks at all times, a massive quantity was located in the County throughout 1987 and 1988 for more than a temporary period. That the particular oil present on January 1, 1988, shortly left the county is not determinative.

*Exxon*, 822 S.W.2d at 277–73.[8] Here, Diamond Shamrock argues that "[t]he incidence of the tax sought to be imposed is merely the oil's passing through—actual movement through—Nueces County." This argument is only persuasive, however, if one considers each barrel of oil separately. Instead, under *Exxon*, the incidence of the tax sought to be imposed is the year-round presence of a large quantity of Diamond Shamrock's oil at rest in Nueces County, which receives government services. We hold that these facts satisfy the first and fourth nexus prongs of *Complete Auto*, and that no interference with foreign commerce is demonstrated in this case. Therefore, the tax here does not violate the Commerce Clause.[9]

The court's opinion in *Exxon* also answers the argument that, if the oil in question here is held to be taxable despite being "in transit," all goods that likewise enter the state of Texas as the state of final destination will become taxable merely by crossing the state line, thus creating the potential for taxation by numerous counties in the State. In rejecting a similar argument, the court explained:

> Exxon analogizes the constant flow of oil through working tanks and pipelines to the transport of oil in tanker trucks, whereby the trucks sporadically pass through a county and are located by chance within that county's boundaries on January 1st of a Tax Year. We disagree. In that scenario, individual units of oil are carried *directly through* the county, from border to border, with little or no delays so that a

to goods which have entered the state of their final destination. In *D.H. Holmes v. McNamara*, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988), the Supreme Court upheld the validity under the Commerce Clause of a Louisiana use tax imposed on catalogs printed outside of the State and shipped to prospective customers within the State. The Court applied the four-prong *Complete Auto* test and found that all four prongs were satisfied. Noting that *Complete Auto* abandoned the abstract notion that interstate commerce "itself" cannot be taxed by the States, the Court rejected what amounted to an "in transit" argument, stating:

> We recognized [in *Complete Auto*] that, with certain restrictions, interstate commerce may be required to pay its fair share of state taxes. Accordingly, in the present case, it makes little difference for Commerce Clause purposes whether appellant's catalogues "came to rest" in the mailboxes of its Louisiana customers or whether they were still considered in the stream of interstate commerce. This distinction may be of some importance for other purposes (in determining, for instance, wheth-

er a "taxable moment" has occurred ...), *but for Commerce Clause analysis it is largely irrelevant.*

*D.H. Holmes*, 486 U.S. at 30–31, 108 S.Ct. at 1623–24 (citation omitted, emphasis added). *See also Havill v. Gurley*, 382 So.2d 109, 111 (Fla. Dist.Ct.App.1980) (Florida state ad valorem tax on merchandise shipped from Tennessee did not violate Commerce Clause "even if the merchandise may be considered to be in transit," since the four prongs of *Complete Auto* were met).

8. The *Exxon* opinion also provides support for our holding that the fourth prong of *Complete Auto* is met in this case. Considering the oil as present within the county in large quantities year-round, as opposed to focusing on specific barrels in the county for only a period of days, there can be no doubt that the tax in question here is fairly related to the government services that are provided.

9. For the same reasons, assuming the Import–Export Clause might be implicated by similar concerns in this case, taxation of the oil is not invalid under that constitutional provision.

massive quantity of oil does not remain within the county continuously.

*Id.* at 273. Oil passing through a county without stopping, in pipelines or on trucks, would thus not be located in that county "for more than a temporary period" so as to allow taxation under the Code.

Under *Exxon*, the oil at issue here does attain situs in Nueces County and is taxable in Texas despite being "in transit" through the state. Indeed, the parties stipulated that if the crude oil had originated from sources within the State of Texas it would be subject to ad valorem taxation in this State. The "in transit" nature of the oil does not call its taxation in Nueces County into question under either the Commerce Clause or the Import–Export Clause of the United States Constitution. Accordingly, we affirm the judgment of the court of appeals.