Opinion issued May 5, 2015



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-12-00264-CV

———————————

**ETC MARKETING, LTD., Appellant**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee**

On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2010-71360

# O P I N I O N

Appellant ETC Marketing, Ltd. protested the appraisal of its natural gas stored in Harris County and the resulting assessment of ad valorem taxes. In the district court, ETC Marketing moved for summary judgment, arguing that its

natural gas was in interstate commerce and therefore exempt from ad valorem taxation. Appellee Harris County Appraisal District (HCAD) also moved for summary judgment, arguing that the natural gas was not in interstate commerce, but even if it were, it was nevertheless subject to ad valorem taxation.

The court denied ETC Marketing's motion for summary judgment and granted the appraisal district's competing motion. ETC Marketing appealed the rulings. We held that the stored gas was subject to ad valorem taxation, and we affirmed the trial court's judgment. Represented by new counsel, ETC Marketing filed a motion for en banc reconsideration, raising new issues and new arguments.[1] We withdraw our prior opinion and vacate our prior judgment, and we issue this opinion and judgment in their stead. The disposition remains the same. The

---

[1] Before filing its motion for en banc reconsideration, ETC Marketing focused its arguments on whether its gas was subject to taxation under the standard of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076 (1977). This was the basis of its arguments in its motion for summary judgment, response to HCAD's motion for summary judgment, appellate briefing on original submission, and initial motion for rehearing. The motion for summary judgment also included an argument that HCAD lacked jurisdiction to tax the property, albeit with little explanation or argument. The final judgment in this case granted HCAD's motion for summary judgment and denied ETC Marketing's motion for summary judgment. The trial court did not specify the grounds upon which its ruling was based. Because the issue of whether the trial court properly ruled on the competing motions for summary judgment was raised on the original submission of this case, we will address the additional argument urged in the motion for en banc reconsideration.

issuance of this opinion renders the motion for en banc reconsideration moot. *See, e.g.*, *Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

## Background

ETC Marketing and its affiliate, Houston Pipeline Company, conduct business and maintain offices in multiple locations throughout Texas. Both entities have offices and employees in Houston and Dallas.

Houston Pipeline operates an intrastate natural gas pipeline. Its system is located entirely within Texas, although it connects to interstate pipelines. It owns and stores natural gas in the Bammel reservoir, a depleted oil reservoir in Harris County. As such, both Houston Pipeline and its contractual partners who store gas at Bammel rely upon and benefit from local emergency and law enforcement services provided by Harris County. Houston Pipeline pays ad valorem taxes to the county based on the appraised value of the land, the equipment used to operate the Bammel reservoir, and the "cushion gas," which is natural gas stored for the purpose of maintaining pressure in the reservoir and which is not sold or intended for sale.

Natural gas is often traded across state lines, and title to the gas transfers to whomever the seller "causes [the gas] to be delivered" and at the point where it is

3

delivered. Because natural gas is fungible, the point of sale does not necessarily correspond to a physical location associated with any particular seller's natural gas. Put another way, the natural gas that a marketer offers for sale is not identifiable as any particular molecules of gas that will be delivered to the purchaser. Instead, the marketer offers gas for sale, and the purchaser receives a corresponding amount of gas at the location where it is accepted.

Gas owned by various marketers is physically commingled in the pipeline system. For example, within the Bammel reservoir, gas destined for sale in Texas is physically commingled with gas destined for sale in interstate commerce. Distinct volumes of gas are segregated by paper allocation, which is used for verifying compliance with contracts and pipeline requirements, reporting to the Texas Railroad Commission, and payment of tariffs. The pipeline system controls the physical movement of natural gas, and storage facilities such as the Bammel reservoir are necessary for the efficient movement of the gas and for the regulation of pipeline capacities so that sufficient quantities can be supplied to users during peak demand periods.

ETC Marketing is a natural-gas marketer, which buys, sells, and markets natural gas. It buys natural gas from multiple sellers, principally at the "Katy Hub," which is a central delivery and distribution point for natural gas into and out of

4

Texas. Because of the nature of the operation of the Katy Hub, ETC Marketing is unable to determine whether the natural gas it purchases there originated in Texas.

When ETC Marketing purchases natural gas, it is "immediately entrusted" to its affiliate Houston Pipeline for storage, and ultimately for transportation to purchasers through the pipeline system. ETC Marketing's storage agreement with Houston Pipeline allows it to buy gas and "time the market" by holding it for delivery at a later time.[2] Accordingly, ETC Marketing has stored gas in the Bammel reservoir for several months at a time, buying it during warmer months and selling it to northern markets in the winter months. The length of time the gas is stored depends on the volume, time of year, and demand for the gas.

ETC Marketing takes the position that all of its gas stored in the Bammel reservoir is in interstate commerce, because its business plan is to sell all of the gas to out-of-state customers. Daniel Hyvl, senior counsel to both ETC Marketing and Houston Pipeline, testified that ETC Marketing was created for the purpose of buying and selling gas in the interstate market, as contrasted with the intrastate

---

[2] Although Houston Pipeline operates an intrastate pipeline, it is authorized to provide such storage and transportation services to ETC Marketing, which sells some of its gas in the interstate market, without becoming subject to federal regulation as a natural gas company. *See* 15 U.S.C. § 717; 15 U.S.C. § 3371 (Natural Gas Policy Act of 1978, § 311). However, due to the nature of this authorization, Houston Pipeline gives precedence to transportation of intrastate-bound gas and may refuse to deliver interstate gas if necessary for the operation of the pipeline.

business of Houston Pipeline. He explained that all of ETC Marketing's gas "is being sold in interstate commerce, because that's the business they're in, to market the gas . . . and not in competition with the pipeline who's selling in intrastate marketing." However, while ETC Marketing generally has a profit-maximizing motivation to sell its gas only in interstate commerce, there is no legal requirement that it do so. Rather, Hyvl explained that ETC Marketing is "free to sell" its gas wherever it could "get the best price." He also said: "[T]here is nothing that says that the gas has to go to a particular location . . . . ETC Marketing has the right to sell" its gas stored at Bammel "anywhere it wants to sell it."

HCAD appraised the value of approximately 33 billion cubic feet of natural gas owned by ETC Marketing and stored in the Bammel reservoir for the calendar year 2010, and it assessed ad valorem taxes on the value of that gas. ETC Marketing has admitted that it owns the natural gas that was stored in the Bammel reservoir and was the subject of HCAD's appraisal.[3] Yet ETC Marketing protested the tax to the Harris County Appraisal Review Board (ARB), challenging it, in part, on the legal basis that the gas was entirely exempt from taxation because it was in interstate commerce. The ARB upheld the inclusion of the natural gas on

---

[3] In its original petition, ETC Marketing alleged that it "owns Property within the Defendant's jurisdictional boundaries for the tax year." "Property" is a defined term in the original petition: it means "the property and/or properties listed in Exhibit 'A'." Exhibit A to the original petition identifies the "Property" as "Bammel Working Gas-32,267,485."

the appraisal rolls, and ETC Marketing appealed to the district court. The appeal was premised entirely on the legal argument that the gas was exempt from taxation because it was in interstate commerce. CR 3–8 (original petition); CR 23–32 (ETC Marketing's motion for summary judgment).

In the district court, the parties filed competing motions for summary judgment. As summary-judgment evidence, ETC Marketing attached to its motion several affidavits, explaining the facts relating to the storage and transportation of the natural gas at issue and establishing the amount of ad valorem property tax paid by Houston Pipeline for the 2009 and 2010 tax years. HCAD took positions opposite from ETC Marketing: that the gas was not in interstate commerce, but even if it were, it would nevertheless be subject to taxation under the standard of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076 (1977). After considering the arguments made by the parties, the trial court denied ETC Marketing's motion for summary judgment, and it rendered a final judgment in favor of HCAD. ETC Marketing appealed.

## Analysis

On appeal, ETC Marketing contends that the trial court erred by denying its motion for summary judgment and by granting HCAD's motion for summary judgment. To prevail on appeal, ETC Marketing must demonstrate both that its natural gas was in interstate commerce, and that the trial court erred in its

7

determination that the gas was subject to ad valorem taxation. We conclude that even if ETC Marketing's stored gas was in interstate commerce, it has presented no compelling legal argument that the gas was immune from local taxation. Accordingly, we will address that issue directly, and we need not separately resolve whether the gas was actually in interstate commerce (including a subsidiary evidentiary issue relevant to that issue[4]). *See* TEX. R. APP. P. 47.1.

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When both sides move for summary judgment, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v.*

---

[4] One of the exhibits submitted by ETC Marketing in support of its motion for summary judgment was an affidavit and report from its designated expert witness, Richard Smead. Among other things, the Smead report opined that all of the gas "handled by ETC Marketing that traveled to the Bammel Field was destined for interconnections with interstate pipelines to be carried to out-of-state markets," and therefore was "in interstate commerce." The district court sustained HCAD's objection to Smead's report on the grounds that his opinions were "unsupported, conclusory, [and] subjective," and that his "legal conclusions that the gas is in interstate commerce are ipse dixit," and are not competent summary-judgment evidence under Rule 702 of the Texas Rules of Evidence and Rules 192.3 and 194.2(f) of the Texas Rules of Civil Procedure. In light of the disposition of this case, we need not resolve the issue of whether the trial court erred by sustaining HCAD's objection to the report. *See* TEX. R. APP. P. 47.1.

*Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Each party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When a plaintiff moves for summary judgment on its own claim, it must conclusively prove all essential elements of its cause of action. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

The Texas Constitution provides that "all . . . tangible personal property in this State, unless exempt as required or permitted by this Constitution . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(b). Under the Tax Code, unless exempt by law, tangible personal property is taxable if it is located in the taxing unit "for longer than a temporary period,"[5] as the gas in this case was.[6] If federal law exempts

---

[5]     TEX. TAX CODE § 11.01; *see also id*. § 21.02. With respect to the date of the valuation, which is not a disputed issue in this appeal, the "owner of an

9

inventory" "may elect to have the inventory appraised at its market value as of September 1 of the year preceding the tax year to which the appraisal applies." *Id.* § 23.12; *see Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 933 (Tex. 1996). ETC Marketing elected a September 2009 valuation for the purposes of the 2010 tax year.

[6] In its motion for en banc reconsideration, ETC Marketing argued that HCAD lacked jurisdiction to impose the tax at issue because the natural gas was not located in Harris County for "longer than a temporary period." The Tax Code does not define "longer than a temporary period." *See* TEX. TAX CODE § 11.01; *see also id.* § 21.02. When resolving disputes about what constitutes a "temporary period," Texas courts have considered whether the property is in interstate commerce, whether there was an interruption in transportation, and whether such stoppage was necessary to facilitate transportation or occurred to accommodate "the business purposes and profits of the company." *Friedrich Air Conditioning & Refrigeration Co. v. Bexar Appraisal Dist.*, 762 S.W.2d 763, 769 (Tex. App.—San Antonio 1988, no writ); *see Midland Cent. Appraisal Dist. v. BP Am. Prod. Co.*, 282 S.W.3d 215, 220–22 (Tex. App.—Eastland 2009, pet. denied); *Dallas Cnty. Appraisal Dist. v. L.D. Brinkman & Co. (Tex.), Inc.*, 701 S.W.2d 20, 21–22 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *cf. Virginia Indonesia Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 912 (Tex. 1995) (determining whether goods bound for export were subject to ad valorem taxation).

Contrary to the new assertions in the motion for en banc reconsideration, the summary-judgment evidence showed that the gas that ETC Marketing stored in the Bammel Reservoir was not presold and could be sold both within Texas and out of state. ETC Marketing contracted to store the gas in Houston Pipeline's facilities, located entirely within Texas, for its own business purposes of timing the market and selling the gas at higher prices out of state during cold months. This interruption in transportation was not necessary to facilitate transportation of the gas but occurred to accommodate the profit-maximizing business purposes of the company. The evidence further showed that the gas was stored for up to several months. Thus, it was not merely "briefly" passing through Harris County on its way out of state. Accordingly, ETC Marketing's natural gas stored in Harris County was not exempt from taxation due to its presence for a mere "temporary period."

property from ad valorem taxation, then it is also exempt from the state tax. TEX. TAX CODE § 11.12.

The Commerce Clause grants Congress the power to regulate interstate commerce, *see* U.S. CONST. art. I, 8, cl. 3, and it has been interpreted by the United States Supreme Court to include a "dormant" Commerce Clause, an implicit prohibition on a state's imposition of discriminatory burdens on interstate commerce.[7] The Dormant Commerce Clause does not relieve those engaged in interstate commerce from their "just share of the state tax burden even though it increases the cost of doing business."[8] "The 'just share of state tax burden' includes sharing in the cost of providing 'police and fire protection, the benefit of a trained work force and the advantages of a civilized society.'"[9] The burden is on the taxpayer to prove that a tax is invalid under the Dormant Commerce Clause, but to do so the taxpayer need only prove that the tax fails one prong of the

---

[7] *Am. Trucking Ass'ns, Inc. v. Michigan Public Svc. Comm'n*, 545 U.S. 429, 433, 125 S. Ct. 2419, 2422–23 (2005); *see also In re Nestle USA, Inc.*, 387 S.W.3d 610, 624–25 (Tex. 2012).

[8] *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S. Ct. 546, 548 (1938); *accord Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 623–24, 101 S. Ct. 2946, 2956–57 (1981); *see also Am. Trucking Ass'ns*, 545 U.S. at 438, 125 S. Ct. at 2425.

[9] *Commonwealth Edison*, 453 U.S. at 624, 101 S. Ct. at 2957 (quoting *Exxon Corp. v. Wisconsin Dep't of Revenue*, 447 U.S. 207, 228, 100 S. Ct. 2109, 2123 (1980)).

*Complete Auto* test.[10] Under the *Complete Auto* standard, a state tax on interstate commerce ordinarily "will not survive Commerce Clause scrutiny if the taxpayer demonstrates that the tax (1) applies to an activity lacking a substantial nexus to the taxing State; (2) is not fairly apportioned; (3) discriminates against interstate commerce; or (4) is not fairly related to the services provided by the State."[11]

As explained above, for the purposes of our analysis we assume without deciding that the natural gas at issue is in the stream of interstate commerce. We also assume, as admitted by ETC Marketing, that it owns an amount of gas stored in Harris County, at the Bammel reservoir, equivalent to the amount of gas appraised by HCAD.[12] The primary argument advanced by ETC Marketing to

---

[10] *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 310–11, 114 S. Ct. 2268, 2276 (1994); *Midland Cent. Appraisal Dist.*, 282 S.W.3d at 223.

[11] *Barclays Bank*, 512 U.S. at 310–11, 114 S. Ct. at 2276 (citing *Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079).

[12] Some of ETC Marketing's arguments are premised upon the physical nature of the gas and the pipeline system, effectively suggesting that its gas is not actually contained within the Bammel reservoir, but that instead it at all times flows freely throughout the interstate pipeline system. Our legal analysis accepts ETC Marketing's admission that it owns the gas located at Bammel, just as both parties assumed this fact for the purposes of the appraisal, and just as ETC Marketing itself assumes for accounting and regulatory purposes. The Tax Code permits a taxpayer protest on the basis that property should not be included on the appraisal records. *See, e.g.*, TEX. TAX CODE § 41.41(a)(3). But the challenge raised by the appeals to the district court and to this court cannot fairly be considered a challenge to the factual determination that ETC Marketing owned and stored gas at Bammel;

evade the application of ad valorem taxation is the operation of the dormant Commerce Clause, as measured by the four prongs of the *Complete Auto* test. *See* Appellant's Br. at 32–46.

## I.     Substantial nexus to the taxing state

The first prong of the *Complete Auto* test considers whether the tax applies to an activity that has a substantial nexus with the taxing state. *Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079. ETC Marketing had offices and employees in Harris County and elsewhere in the state of Texas. The natural gas at issue was purchased in Texas at the Katy Hub, and it was transported by Houston Pipeline, which also has offices and employees in the state of Texas. Houston Pipeline's entire system is located within Texas, including the Bammel reservoir. The natural gas in question was owned by ETC Marketing and stored for up to several months at a time in the Bammel reservoir, pursuant to a storage agreement with Houston Pipeline.

These factors establish that ETC Marketing had a substantial physical presence in Harris County, and they therefore distinguish this case from one it relies upon in this appeal, *Peoples Gas, Light, & Coke Co. v. Harrison Cent. Appraisal Dist.*, 270 S.W.3d 208 (Tex. App.—Texarkana 2008, pet. denied). In

---

instead the appeals assert a legal challenge to HCAD's assessment of a tax on that gas based upon ETC Marketing's legal contention that the gas is in interstate commerce and therefore exempt from local taxation.

13

*Peoples Gas*, the court of appeals held that a tax assessment on stored natural gas was invalid under *Complete Auto* because a substantial nexus with Texas was lacking. *Id.* at 219. But unlike this case, Peoples Gas had no physical facilities, employees, representatives, or customers in Texas. *Id.* at 218. Its only connection to Texas was through the "structure and location" of the separately owned pipeline, which made the decision about where to store the gas and paid its own ad valorem taxes on the facility and equipment used for storage of natural gas in Texas. *Id.* at 218–19. In contrast, ETC Marketing had a physical presence in Harris County including employees, offices, and—most significantly—natural gas that it had specifically contracted to store with Houston Pipeline. Unlike the pipeline at issue in *Peoples Gas*,[13] Houston Pipeline's facilities are located entirely within Texas, including the Bammel reservoir in Harris County. There was no evidence that the gas was already bound for another state when it was committed to Houston Pipeline.[14] Moreover, unlike the scenario in *Peoples Gas*, in which the court

---

[13]   *Peoples Gas, Light, & Coke Co. v. Harrison Cent. Appraisal Dist.*, 270 S.W.3d 208, 211 (Tex. App.—Texarkana 2008, pet. denied) (pipeline at issue had "many" associated "storage facilities" that were "operated 'in the aggregate,'" such that the pipeline's storage and transportation of gas did not "use any particular storage field exclusively").

[14]   In contrast, in *Peoples Gas* the appellant had purchased natural gas and paid for its "contractual storage in the Iowa-Illinois zone," "transportation to the Iowa–Illinois zone," and the contractual right to physical delivery in Chicago, Illinois. *Id*. at 213–14.

emphasized that the owner of the gas made no decision to store gas in Texas to serve its own business purpose,[15] here there was evidence that ETC Marketing contracted to store the gas in Houston Pipeline's facilities, located entirely within Texas, for its own business purposes of timing the market and selling the gas at higher prices out of state during cold months.[16] And although ETC Marketing asserts that Houston Pipeline had the contractual right to control where the gas was stored, the record contains no evidence that Houston Pipeline had storage capacity for the appraised volume of gas at any location other than at the Bammel reservoir.

The prolonged physical presence of ETC Marketing's gas, deliberately stored in Texas, also distinguishes this case from the circumstances presented in *Midland Central Appraisal District v. BP America Production Co.*, 282 S.W.3d

---

[15] *Id.* at 216 ("Since Peoples has no control over where that natural gas is stored and how much is stored at any given location, we cannot say that Peoples made the decision to store gas at North Lansing in order to serve its business purpose.").

[16] Our dissenting colleague contends that by observing the differences between this case and *Peoples Gas*, we have "implicitly" concluded that the gas at issue was not in interstate commerce. Not so. Still, we observe the distinction between the cases because it is ETC Marketing's express contention that its gas is in interstate commerce even while it is being stored at Bammel pending its later decision of where and when to sell the gas. *See* Appellant's Br. at 27. The circumstances that inform a decision about whether goods are "in transit" also may inform a court's decision about whether the first and fourth nexus requirements of *Complete Auto* are met. *See Diamond Shamrock Ref. & Mktg. Co. v. Nueces Cnty. Appraisal Dist.*, 876 S.W.2d 298, 302 (Tex. 1994).

15

215 (Tex. App.—Eastland 2009, pet. denied), in which ad valorem tax was improperly assessed on oil passing in interstate commerce through an interstate pipeline, but temporarily held in a tank farm located in Texas. Unlike ETC Marketing's natural gas deliberately stored at Bammel to facilitate timing the natural gas market, the oil at issue in the *Midland* case was not held in the tank farm for storage purposes or for any business purpose of the owner other than its transmission through the pipeline. *See* 282 S.W.3d at 221–23.

ETC Marketing argues that the United States Supreme Court has held that physical presence does not satisfy the substantial nexus test in ad valorem cases. We disagree. ETC Marketing relies on *Quill Corp. v. North Dakota By & Through Heitkamp*, 504 U.S. 298, 112 S. Ct. 1904 (1992), which reaffirmed that physical presence satisfies the first prong of the *Complete Auto* test in sales-and-use tax cases. *See id.* at 317–18, 112 S. Ct. at 1916. Texas cases have come to the same conclusion in other contexts and expressly rejected ETC Marketing's argument. *See, e.g.*, *Rylander v. 3 Beall Bros. 3, Inc.*, 2 S.W.3d 562, 570 (Tex. App.—Austin 1999, pet. denied) (franchise tax case, citing *Quill Corp.*, 504 U.S. at 312–14, 112 S. Ct. 1904).[17]

---

[17] Moreover, this issue was presented to the Supreme Court of Texas in *Virginia Indonesia Co. v. Harris County Appraisal Dist.*, 910 S.W.2d 905 (Tex. 1995), a case that challenged HCAD's assessment of ad valorem taxes on goods stored in Harris County while in transit intended for foreign export.

16

The Commerce Clause requirement of a substantial nexus with the taxing state is satisfied for purposes of an ad valorem tax by the taxpayer's physical presence in the state in the form of physical storage of tangible personal property. Because ETC Marketing was physically present in the state, and the activity being taxed—ownership and storage of natural gas—occurred in Harris County,[18] there is a substantial nexus between the activity being taxed and the state of Texas.

The Court's majority resolved that appeal by concluding that the tax violated the federal constitution's Import-Export Clause, U.S. CONST. art. 1, § 10, cl. 2, expressly declining to address whether the tax also offended the Commerce Clause. *See VICO*, 910 S.W.2d at 915. But in his dissenting opinion, then-Justice Nathan Hecht did reach the issue, joined by then-Justice Priscilla Owen. And Justice Hecht observed in that case: "The goods clearly have a nexus to this state. They are present for relatively prolonged periods during which they receive local services such as police and fire protection." *Id.* at 925 (Hecht, J., dissenting); *see also Peoples Gas*, 270 S.W.3d at 218 ("The Commerce Clause requirement of a substantial nexus with the taxing state is satisfied by the taxpayer's physical presence in the state.").

[18] Notably, in similar circumstances the supreme courts of both Oklahoma and Kansas have recently found the required substantial nexus to exist based solely on the physical presence of the gas and without regard to any of the owner's other activities within the state. *See In re Assessment of Pers. Prop. Taxes Against Missouri Gas Energy, Div. of S. Union Co., for Tax Years 1998, 1999, & 2000*, 234 P.3d 938, 959 n.84 (Okla. 2008) (expressly declining to follow *Peoples Gas*), *cert. denied sub nom. Missouri Gas Energy v. Schmidt*, 559 U.S. 970, 130 S. Ct. 1685 (2010); *In re Appeals of Various Applicants from a Decision of Div. of Prop. Valuation of State for Tax Year 2009 Pursuant to K.S.A. 74-2438*, 313 P.3d 789, 799 (Kan. 2013) (also declining to follow *Peoples Gas*: "There is axiomatically a substantial nexus between Kansas and the gas stored in this state."), *cert. denied*, 135 S. Ct. 51 (2014).

Accordingly, we conclude that the tax in this case applies to an activity that has a substantial nexus with the taxing state. *See Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079.

## II.    Fair apportionment

The second prong of the *Complete Auto* test is whether the tax is fairly apportioned. *Id*. "The central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260–61, 109 S. Ct. 582, 588 (1989). To determine "whether a tax is fairly apportioned" we examine "whether it is internally and externally consistent." *Id.* at 261, 109 S. Ct. at 589.

*a.    Internal consistency*. A tax is internally consistent when it is "structured so that if every State were to impose an identical tax, no multiple taxation would result." *Id.* We consider the text of the challenged statute and determine whether multiple taxation would ensue if other States had identical statutes. *Id.* Here, the relevant provisions of the Texas Tax Code impose taxes on "tangible personal property" that is located in the taxing unit on the date of valuation "for longer than a temporary period." TEX. TAX CODE §§ 11.01, 21.02. It has been conceded for purposes of this appeal that ETC Marketing owned the gas at issue and that it was located in Harris County at the time its value was assessed. We have also explained that the gas was present in Harris County for longer than a

18

temporary period. *See supra* note 6. There is no argument that ETC Marketing contracted to store its gas in any other state. There is no argument that any other taxing jurisdiction has attempted to impose an ad valorem tax on the gas at issue for a period of time that overlaps the assessment at issue.[19] Because the record does not suggest that ETC Marketing attempted to store its gas in two different states at the same time, its value could not be taxed by another jurisdiction at the same time, and thus we conclude on this record that the tax is internally consistent. *See Goldberg*, 488 U.S. at 261, 109 S. Ct. at 589.

      **b.**     ***External consistency.*** "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.* at 262, 109 S. Ct. at 589. "We thus examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate

---

[19]    Dan Hyvl, senior counsel to ETC Marketing, specifically testified that the company had no concern about another state imposing ad valorem tax while the gas was in transit because once the gas leaves the state, it belongs to the purchaser. This refutes the suggestion, made in the motion for en banc reconsideration, that our holding in this case would subject all "natural gas suppliers" to multiple taxation as natural gas in commerce traverses multiple jurisdictions. Moreover, ETC Marketing does not suggest that all interstate natural gas sales involve the particular facts that are dispositive in this case, including the deliberate storage of gas for more than a "temporary period," within one taxing jurisdiction, for reasons that serve the owner's business purposes as opposed to being merely incidental to the interstate transportation of the gas to facilitate its sale.

activity." *Id.* HCAD argues that the tax is externally consistent because it has a right to impose the ad valorem tax and because the gas is stored for months rather than simply being present on the date of assessment or valuation. ETC Marketing argues that the tax is externally inconsistent because it is not possible to determine, at any given time, the actual, physical location of its natural gas. It says in its brief: "Given the ethereal nature of gas, it is impossible to determine what portion of the gas to which ETC has a right, if any, is actually located under Harris County." Likewise, it contends that it is not possible to determine whether or how much of its natural gas originated in Texas. But as we have already explained, we must reject this reasoning because ETC Marketing has acknowledged its ownership of the 33 billion cubic feet of natural gas stored in the Bammel reservoir as to which HCAD assessed taxes. In light of this record, ETC Marketing's argument that the tax was externally inconsistent because it was not possible to determine the location of particular molecules of its gas must fail. The tax reflects the in-state component of the storage of the entire volume of gas and is externally consistent. Accordingly, we conclude that the tax in this case was fairly apportioned. *See Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079.

### III. Discrimination against interstate commerce

The third prong of the *Complete Auto* test is whether the tax discriminates against interstate commerce. *Id*. A tax is nondiscriminatory under *Complete Auto*

20

when it "places no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character." *Id.* at 282, 97 S. Ct. at 1081. Based on its argument that the tax is not fairly apportioned, ETC Marketing concludes that the tax discriminates "in practical effect." We have explained why its arguments as to fair apportionment are not meritorious. HCAD taxed only that quantity of gas stored in Harris County on the date of taxation and as to which ETC Marketing acknowledged its ownership. Nothing in the record indicates that these taxes were selectively imposed on interstate commerce or that the rates of taxation were different or more onerous for property in interstate commerce. Nothing in the record indicates any lack of uniformity or unfairness in the process of assessing ad valorem taxes on ETC Marketing's gas which we assume to be in interstate commerce as compared with like property purely in intrastate commerce. Accordingly, we conclude that the ad valorem taxes here were nondiscriminatory. *See Nueces Cnty Appraisal Dist. v. Diamond Shamrock Refining & Marketing Co.*, 853 S.W.2d 212, 217–18 (Tex. App.—Corpus Christi 1993) ("Clearly, this nondiscriminatory tax passes this test because the taxing state only taxed that property which was present within its boundaries and received governmental services regardless of its origin or its destination."), *aff'd*, 876 S.W.2d 298 (Tex. 1994); *see also Vinmar, Inc. v. Harris Cnty. Appraisal Dist.*, 947 S.W.2d 554, 559 (Tex. 1997) (Hecht, J., dissenting) ("The tax in this case is nondiscriminatory; that

21

is, it does not single out property awaiting export. It is imposed on all personal property in Harris County on January 1 each year."); *cf. Michelin Tire Corp. v. Wages*, 423 U.S. 276, 287, 96 S. Ct. 535, 542 (1976) (noting that "nondiscriminatory ad valorem" and other types of taxes share "the characteristic that they cannot be selectively imposed and increased so as substantially to impair or prohibit importation"); *Dep't of Revenue of State of Wash. v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 748, 98 S. Ct. 1388, 1398 (1978) ("The Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity.")

The tax at issue in this case is an ad valorem tax of general application, and we hold that it was not discriminatory. *See Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079.

## IV.    Fair relation to State-provided services

The fourth and final prong of the *Complete Auto* test is whether the tax is fairly related to the services provided by the state. *Id*. "The fair relation prong of *Complete Auto* requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity." *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 199–200, 115 S. Ct. 1331, 1345–46 (1995); *see also In re Nestle USA, Inc.*, 387 S.W.3d 610, 625 (Tex. 2012). "[P]olice and fire

protection, along with the usual and usually forgotten advantages conferred by the State's maintenance of a civilized society, are justifications enough for the imposition of a tax." *Jefferson Lines*, 514 U.S. at 199–200, 115 S. Ct. at 1345–46.

ETC Marketing argues that the "fairly related" prong is not satisfied because the gas was entrusted to Houston Pipeline, which pays taxes on the Bammel reservoir and the equipment related to it. It further argues that Houston Pipeline has complete and exclusive control over the activity being taxed, which is the storage of the gas in the reservoir. However, the summary-judgment evidence showed that ETC Marketing retained control over the disposition of the gas for its own business purposes.

ETC Marketing has the burden of proof on this *Complete Auto* issue. *See Barclays Bank*, 512 U.S. at 314, 114 S. Ct. at 2278. It owns the gas while it is stored at Bammel, and it enjoys the benefit of public services which facilitate gas storage, which in turn allows it to accomplish its business objective of buying natural gas and holding it for sale at some later point in time. Accordingly, we conclude that the summary-judgment evidence shows that the tax in this case is fairly related to the services provided by the state. *See Complete Auto*, 430 U.S. at 279, 97 S. Ct. at 1079; *accord In re Assessment of Pers. Prop. Taxes Against Missouri Gas Energy, Div. of S. Union Co., for Tax Years 1998, 1999, & 2000*, 234 P.3d 938, 959 n.84 (Okla. 2008) ("suffice it to say that both the pipeline company

and the owner of gas stored in an underground storage facility benefit from the state's services and protection"), *cert. denied sub nom. Missouri Gas Energy v. Schmidt*, 559 U.S. 970, 130 S. Ct. 1685 (2010); *In re Appeals of Various Applicants from a Decision of Div. of Prop. Valuation of State for Tax Year 2009 Pursuant to K.S.A. 74-2438*, 313 P.3d 789, 799 (Kan. 2013), *cert. denied*, 135 S. Ct. 51 (2014).

## Conclusion

Although the parties have vigorously disputed whether the natural gas being stored at the Bammel reservoir was in interstate commerce for the purposes of evaluating the validity of an ad valorem tax imposed upon it, it is not necessary for us to resolve that dispute, or the related evidentiary issue concerning the admissibility of ETC Marketing's expert report, in order to resolve this appeal. Even assuming that the gas is in interstate commerce, it was nevertheless appropriate for an ad valorem tax to be imposed when the owner stored the gas in Texas for the business purpose of selling the gas at a higher price at a later time of the owner's choosing. Accordingly, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting. Dissenting opinion issued January 13, 2015.